Department of Health and Human Services
Nos. 2006-070
      2006-219

## Petition of Chase Home for Children & a.
## (New Hampshire Department of Health and Human Services)

Argued: January 11, 2007
Opinion Issued: June 8, 2007

*Orr and Reno, P.A.*, of Concord (*Lisa Snow Wade* on the brief and orally), for the petitioners.

*Kelly A. Ayotte*, attorney general (*Suzan M. Lehmann*, senior assistant attorney general, on the brief and orally), for the New Hampshire Department of Health and Human Services.

Duggan, J. The petitioners, Chase Home for Children, Child and Family Services, Hannah House, NFI North, Odyssey House, Orion House and Pine Haven Boys Center, filed two petitions for writ of

certiorari, *see* SUP. CT. R. 11, challenging decisions by two RSA 170-G:4-a Hearing Panels (hearing panels) pertaining to their state fiscal year (FY) 2004 and 2005 rate appeals. We affirm in part and reverse in part.

## I. Factual Background

The following facts are contained in the record. The petitioners are New Hampshire residential childcare providers who furnish residential placements for children who are delinquents, *see* RSA ch. 169-B (2002 & Supp. 2006); children who have been abused, *see* RSA ch. 169-C (2002 & Supp. 2006); and children in need of services, *see* RSA ch. 169-D (2002 & Supp. 2006). The New Hampshire Department of Health and Human Services (DHHS) is obligated to set annual rates at which such residential childcare providers will be compensated by the State for the services they provide. *See* RSA 170-G:4, XVII, XVII-a (2002). In order to meet this obligation, the commissioner of DHHS adopted Residential Child Care Facilities Rate Setting Rules (rate setting rules). *See* RSA 170-G:5 (2002); N.H. ADMIN. RULES, He-C 6422. Although the rate setting rules were adopted in 2002, they did not become effective until the start of FY 2004.

The New Hampshire Division for Children, Youth & Families (DCYF) computes the residential childcare facility rates pursuant to the methodology set forth in Rule 6422.22. *See* N.H. ADMIN. RULES, He-C 6422.04. After the rates are computed, they take effect at the beginning of the next state fiscal year, and remain in effect for twelve months. *Id.* 6422.22(b)-(c). Providers may challenge the rates by filing an appeal. *See* RSA 170-G:4-a (2002); N.H. ADMIN. RULES, He-C 6422.25.

### A. The FY 2004 Rate Appeals

After DCYF set the FY 2004 residential rates, the petitioners appealed their FY 2004 rates, arguing that DCYF did not calculate the rates in accordance with Rule 6422.22. Pursuant to RSA 170-G:4-a, a three-person panel was convened to hear the petitioners' rate appeal. On August 30 and 31, 2004, the panel held an evidentiary hearing to determine whether DCYF properly set the rates for the petitioners.

On December 15, 2004, the panel issued a decision and determined that the petitioners had proved by a preponderance of the evidence that DCYF failed to comply with various provisions of Rule 6422. In particular, the panel concluded that DCYF erred by simply carrying forward the FY 2003 rates instead of calculating new rates in accordance with newly enacted Rule 6422. The panel directed DCYF to recalculate the FY 2004 rate for each petitioner by February 4, 2005, and provided the petitioners with a deadline for requesting a supplemental hearing to challenge DCYF's recalculated rates.

On February 18, 2005, the petitioners requested a supplemental hearing because: (1) they disagreed with DCYF's recalculation of the rates; and (2) DCYF indicated that it would not actually pay the petitioners based upon the recalculated rates due to "fiscal and legal constraints on the Department's ability and authority to expend funds in excess of those that were appropriated by the legislature." Accordingly, a supplemental hearing was held on April 4 and 6, and May 23, 2005.

On August 17, 2005, the panel issued its supplemental and final decision on the petitioners' FY 2004 rate appeals. With respect to each petitioner, the panel reviewed the evidence and determined the correct FY 2004 rate, in accordance with Rule 6422. For each petitioner the rate was increased. The panel further concluded that the revised FY 2004 rates should have become effective at the beginning of FY 2004. However, the panel determined that it did not have the legal authority to order DCYF to make retroactive payments at the recalculated rate levels. The panel stated:

> The relevant statutes (RSA 170-G:4, XVII and XVII-a, and RSA 170-G:4-a), the He-C 6422 Rules, and the scope of this panel's authority have not yet been interpreted by the [New Hampshire] Supreme Court. Consequently, the Panel is constrained from ordering retroactive relief in these consolidated appeals. Any such relief must be sought by [the petitioners] through the New Hampshire courts or legislature.

The petitioners filed a joint motion for reconsideration on September 14, 2005. Although the petitioners did not challenge the amount of the FY 2004 rates the panel had determined for each of them, the petitioners argued that the panel should have ordered retroactive application of the recalculated rates, and that the failure to do so amounted to an unconstitutional taking of their financial resources. The panel denied the motion.

### B. The FY 2005 Rate Appeals

While the petitioners were pursuing the appeal of their FY 2004 rates, DCYF set the FY 2005 residential rates. Thereafter, the petitioners appealed their FY 2005 rates, arguing that DCYF did not set the rates using the methodology required by Rule 6422, but instead simply carried over the FY 2004 rates without analyzing the petitioners' FY 2005 budget requests. As with the FY 2004 rate appeal, a three-person panel conducted a hearing in January 2005. At the hearing, the parties stipulated that DCYF did not fully comply with certain provisions of Rule 6422 when it established the FY 2005 rates for the petitioners.

On March 9, 2005, the panel issued a written decision ruling that the FY 2005 rates set by DCYF were not calculated in accordance with Rule 6422, and ordering DCYF to recalculate them for each petitioner by March 24, 2005. Thereafter, the panel ordered the parties to meet to determine whether the differences—if any—in their rate proposals could be resolved. The panel stated that supplemental hearings would be held on April 11 and 18, 2005, if the parties failed to reach an agreement by April 1, 2005.

The parties were not able to reach an agreement regarding the FY 2005 rates by April 1. However, on April 7 they informed the panel that they had reached an agreement regarding what the FY 2005 rates would have been had DCYF fully complied with Rule 6422. In spite of this agreement, DCYF informed the panel that it had no intention of waiving any arguments pertaining to its ability or authority to reimburse the petitioners at the agreed-upon rates. On April 11, 2005, a brief hearing was held to permit the parties to introduce the agreed-upon rate revisions into evidence and to hear offers of proof and testimony regarding calculation of "units of service" for each petitioner.

On May 26, 2005, the panel issued its final decision on the petitioners' FY 2005 rate appeals. It determined that the agreed-upon FY 2005 rates were calculated in accordance with Rule 6422. Further, it ruled that it did not have the legal authority to order DCYF to make retroactive payments at the revised rate levels. However, it concluded that it did have the authority to order DCYF to reimburse the petitioners at the revised rate levels for services performed during June 2005, which was the final month of FY 2005, provided that sufficient funds appropriated to DCYF for residential services were available. If, however, the available funds were insufficient to fully reimburse the petitioners at the revised FY 2005 rate levels for June, the panel directed DCYF to establish a "reasonable priority or classification system" to facilitate the distribution of available funds among the petitioners. The petitioners filed a motion for reconsideration on June 24, 2005, which the hearing panel denied on December 28, 2005. In spite of the hearing panel's decision, DCYF neither paid the petitioners for services provided in June 2005 at the recalculated rate, nor established a "reasonable priority or classification system" to facilitate the distribution of available funds to the petitioners.

The petitioners then filed the two petitions here at issue, which were consolidated. The petitioners argue that: (1) the hearing panels erred when they determined that they were not authorized to order DHHS to make retroactive rate payments; (2) the 2005 hearing panel erred when it determined that the petitioners' remedy was limited to reimbursement at the revised FY 2005 rate levels for one month only, contingent upon whether there were sufficient appropriations available; and (3) they were

unconstitutionally deprived of financial resources. The petitioners also seek costs and reasonable attorney's fees.

*II. Discussion*

Review on certiorari is an extraordinary remedy, usually available only in the absence of a right to appeal, and only at the discretion of the court. *Petition of State of N.H. (State v. Campbell)*, 152 N.H. 515, 517 (2005). Because there is no statutory provision for appellate review of the hearing panels' decisions on the petitioners' rate appeals, a petition for a writ of certiorari is the proper vehicle for obtaining review. *Petition of Perkins*, 147 N.H. 652, 653-54 (2002). Our review of an administrative agency's decision on a petition for certiorari is limited to determining whether the agency has acted illegally with respect to jurisdiction, authority or observance of the law or has unsustainably exercised its discretion or acted arbitrarily, unreasonably or capriciously. *Id.* at 654; *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining the "unsustainable exercise of discretion" standard). We exercise our power to grant such writs sparingly and only where to do otherwise would result in substantial injustice. *Petition of State of N.H.*, 152 N.H. at 517.

The petitioners' primary argument is that the hearing panels had the authority to order retroactive payment of the recalculated rates. In support of this position, they assert that Rule 6422 mandates that a residential provider's rate for a state fiscal year be effective from the beginning of the fiscal year and for the following twelve months, and that the hearing panels are under a clear duty to establish the actual rate and to determine when it becomes effective.

DHHS counters that the hearing panels properly declined to order retroactive payments at the recalculated FY 2004 and 2005 rates because the hearing panels lack the executive power to administer DHHS' budget. DHHS further argues that the hearing panels lack the authority to require it to pay rates in excess of available appropriations, citing *Petition of Strandell*, 132 N.H. 110 (1989). Finally, DHHS contends that we should abstain from rendering decisions pertaining to the sufficiency and administration of DHHS' budget.

To address the petitioners' principal argument, we must examine the language of Rule 6422, in conjunction with the relevant statutes, to ascertain whether it gives hearing panels the authority to determine rates that would be effective from the beginning of each of the respective fiscal years. When interpreting agency rules, where possible, we ascribe the plain and ordinary meanings to words used. *Appeal of Town of Nottingham*, 153 N.H. 539, 555 (2006). We also look at the rule we are construing as a whole rather than in segments. *Id.* Finally, while we accord

deference to an agency's interpretation of its own regulations, "that deference is not total. We still must examine the agency's interpretation to determine if it is consistent with the language of the regulation and with the purpose which the regulation is intended to serve." *Id.* (quotation omitted).

Turning first to the administrative rules, Rule 6422.04 plainly states that residential rates "shall be computed by DCYF pursuant to He-C 6422.22" and "shall become effective at the beginning of the next state fiscal year." N.H. ADMIN. RULES, He-C 6422.04(a)-(b). The rule further provides that the rate "shall remain in effect for the following 12 months." *Id.* 6422.04(c). The import of this rule is that once established, a rate takes effect at the beginning of the state fiscal year and remains in effect for the entire year.

The process of rate setting is described in detail in Rule 6422.24. DCYF first establishes a "tentative rate" after it has reviewed a childcare provider's budget proposal. *Id.* 6422.24(a). The provider is then given written notice of the tentative rate, along with "any schedule of adjustments used for the determination of the tentative rate." *Id.* 6422.24(b). If a provider wants to dispute the tentative rate, it can submit a written request for rate consideration to the director of DCYF. *Id.* 6422.24(d)-(e). Within twenty working days of receipt of the request, the director "shall make a decision based upon application of these rules and notify the [provider]." *Id.* 6422.24(i). If a provider wishes to appeal the director's decision, it must "file a written appeal with the commissioner that is signed by a person duly authorized to submit the appeal and state the reasons for the appeal." *Id.* 6422.25(a). Thereafter, a three-person panel is appointed to hear the appeal.

Administrative tribunals—such as the hearing panels—have only the authority that is "expressly granted or fairly implied by statute." *Appeal of Public Serv. Co. of N.H.*, 130 N.H. 285, 291 (1988) (quotation omitted). The hearing panel's composition, procedures and authority are defined by RSA 170-G:4-a, which states, in pertinent part:

I. Any service provider may appeal decisions made by the department relative to rates or certifications pursuant to RSA 170-G:4, XVII or XVIII by filing an appeal with the commissioner of health and human services.

II. The appeal shall be in writing, signed by a person duly authorized by the service provider to submit the appeal, and shall state the specific reasons for the appeal.

III. The appeal shall be filed within 14 working days of the date of written notification sent to the applicant, stating the decision of the commissioner regarding rates or certification.

IV. The appeal shall be heard under RSA 541-A:31-36 by the commissioner or his designee and 2 members from the advisory board established by RSA 170-G:6. The chairman of the advisory board shall appoint its 2 members. No person hearing the appeal shall have had any involvement in establishing the rate or deciding on the certification that is the subject of the appeal, or be affiliated in any way with the appellant.

*See also* N.H. ADMIN. RULES, He-C 6422.25.

When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. *Appeal of Town of Bethlehem*, 154 N.H. 314, 319 (2006). We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add words that the legislature did not include. *Id.*

■ In creating the hearing panels, the legislature explicitly placed within their jurisdiction the authority to review "decisions made by the department relative to rates." RSA 170-G:4-a, I. In light of this broad language and the text of Rule 6422, we conclude that it can be fairly inferred that establishing the actual residential rate for a childcare provider and determining when the rate becomes effective fall within the jurisdiction the legislature conferred upon the hearing panels.

Both the 2004 and 2005 hearing panels did, in fact, determine the actual residential rate applicable to each petitioner in this case. They did so by considering evidence and arguments presented by the petitioners and DCYF, and then calculating the rate in accordance with Rule 6422.22. Further, the panels concluded that the newly calculated rates were effective starting at the beginning of the respective state fiscal years, which is consistent with Rule 6422.04.

■ Although we agree with the petitioners that the hearing panels have the authority to establish residential rates and determine when the rates become effective, we disagree that the hearing panels have the authority to order DHHS to make retroactive payments at the recalculated rate levels. Neither Rule 6422 nor the provisions of RSA ch. 170-G contain any language that could be construed as granting the panels such authority. The absence of such language indicates that the legislature did not see fit to confer upon the hearing panels the power to order DHHS to make such expenditures. *See Appeal of Public Serv. Co. of N.H.*, 130 N.H. at 291.

Accordingly, we affirm the hearing panels' decisions in so far as they determined the correct residential rates for the petitioners for FY 2004 and 2005, concluded that the rates took effect at the beginning of the respective fiscal years, and recognized that they lacked the authority to order DHHS to make retroactive payments to the petitioners at the recalculated rates.

The petitioners assert that they were underpaid in FY 2004 by over $1.3 million, and by approximately $1.6 million in FY 2005. They argue that if the rates determined by the hearing panels are not retroactive to the beginning of the respective fiscal years, they will have been unconstitutionally deprived of these financial resources.

It is apparent from the hearing panels' decisions that the petitioners are entitled to retroactive payments at the newly calculated rates. It is also clear from the record that DHHS failed to make such payments as required by Rule 6422 and the statutory scheme. However, the scope of our review on certiorari is restricted to determining the hearing panels' authority. Thus, we need not decide what further remedies are available to the petitioners, such as whether the petitioners could obtain relief in a civil action in superior court.

We also decline to address any arguments pertaining to the separation of powers doctrine or sovereign immunity, because neither issue was raised before the hearing panels, and no order has been issued requiring payment of funds to the petitioners. Similarly, no order has been issued ruling that the petitioners cannot receive retroactive payments. Thus, the petitioners' takings argument and DHHS' separation of powers and sovereign immunity arguments are not ripe for our review. *See Petition of N.H. Bar Assoc.*, 151 N.H. 112, 122 (2004) (Duggan, J., dissenting).

Next, we address the petitioners' argument that the 2005 hearing panel misinterpreted *Strandell* when ordering payment for June 2005 to the petitioners at the recalculated FY 2005 rates. As described above, the panel ordered DCYF to reimburse the petitioners at the agreed-upon revised FY 2005 rates for services performed for June, the final month of FY 2005, provided that sufficient FY 2005 funds appropriated to DCYF for residential services were available. It further ordered that if the available funds were insufficient to fully reimburse the petitioners at the revised FY 2005 rate levels, DCYF must fashion a "reasonable priority or classification system" to facilitate the distribution of available funds among the petitioners. The petitioners assert that *Strandell* "does not support giving agencies unfettered discretion to shift the cost of services it purchases onto . . . private providers in order for it to comply with RSA 9:19."

■ We need not consider whether the hearing panel misconstrued the *Strandell* decision, because just as the hearing panels have no authority to order DHHS to make retroactive payments, the panels also lack the authority to instruct DHHS as to how it must spend its appropriated monies prospectively. Consequently, it was error for the panel to order DCYF to devise a reasonable priority or classification system to facilitate distribution of available funds to the petitioners, and this portion of the 2005 panel's decision is reversed.

Based upon the foregoing, the 2004 hearing panel's decision is affirmed, and the 2005 hearing panel's decision is affirmed in part and reversed in part. The petitioners' request for attorney's fees and costs is denied.

*Affirmed in part and reversed in part.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.