Department of Health and Human Services
No. 2006-510

## PETITION OF NEW HAMPSHIRE DIVISION FOR CHILDREN, YOUTH AND FAMILIES
### (New Hampshire Department of Health and Human Services)

Argued: April 3, 2007
Opinion Issued: June 15, 2007

578

*Kelly A. Ayotte*, attorney general (*Suzan M. Lehmann*, senior assistant attorney general, on the brief and orally), for the petitioner.

*Orr and Reno, P.A.*, of Concord (*Lisa Snow Wade* on the brief and orally), for the respondents.

GALWAY, J. The New Hampshire Division for Children, Youth and Families (DCYF) has petitioned for a writ of certiorari, *see* SUP. CT. R. 11, challenging a decision of the RSA 170-G:4-a Hearing Panel (hearing panel) pertaining to rates set for state fiscal year 2006 (SFY 2006) for the respondents, Hannah House, NFI North, and Pine Haven Boys Center. We affirm in part and vacate in part.

The respondents are New Hampshire residential childcare providers who serve children referred for residential placement pursuant to RSA chapters 169-B (Supp. 2006), 169-C (Supp. 2006), and 169-D (Supp. 2006). The New Hampshire Department of Health and Human Services (DHHS) is required to set the annual rates at which such providers are compensated for their services. *See* RSA 170-G:4, XVII, XVII-a (2002). DHHS has adopted Residential Child Care Facilities Rate Setting Rules (rate setting rules), which determine how the rates are calculated. *See* RSA 170-G:5 (2002); N.H. ADMIN. RULES, He-C 6422 (Rule 6422). DCYF is responsible for setting the rates pursuant to the rate setting rules. *See* N.H. ADMIN. RULES, He-C 6422.04. After DCYF computes the rates, they take effect at the beginning of the next state fiscal year, and remain in effect for twelve months. *Id.* 6422.22(b)-(c). Providers may challenge the rates by filing an appeal with the hearing panel. *See* RSA 170-G:4-a (2002); N.H. ADMIN. RULES, He-C 6422.25.

After DCYF set the residential rates for fiscal years 2004 and 2005, various providers, including the respondents, appealed, arguing that the rates were improperly calculated or that the amounts actually paid were too low. Following the decisions of the hearing panels, the providers petitioned this court for a writ of certiorari to challenge the hearing panels' decisions. *See Petition of Chase Home for Children*, 155 N.H. 528 (2007).

While the case relative to the 2005 rates was pending before the hearing panel, DCYF calculated the rates for SFY 2006 in accordance with Rule 6422. DCYF, however, determined that it would not pay those rates because of budget restrictions imposed by Laws 2005, chapter 176 (Budget Bill) and Laws 2005, 177:117 (Trailer Bill). DCYF construed the Budget and Trailer Bills as requiring it simply to increase the provider rates it actually paid in 2005 by five percent, regardless of the rates called for by Rule 6422. The respondents appealed, arguing that DCYF was required to pay the rate calculated in accordance with Rule 6422, or, alternatively, that the Budget and Trailer Bills required DCYF to base the five percent increase upon the rates determined as a result of the 2005 rate appeal (2005 calculated rates), rather than upon the rates it actually paid in 2005 (2005 paid rates).

The hearing panel agreed with DCYF that the Budget and Trailer Bills required a five percent increase in reimbursement rates. The hearing panel agreed with the respondents, however, that the increase should have been applied to the 2005 calculated rates, not the 2005 paid rates. The hearing panel stated that "basing the 2006 paid rates on the 2005 paid rates, which were the subject of the 2005 appeal, [would] essentially nullif[y] the entire 2005 appeal process." Additionally, the hearing panel determined that the newly calculated rates took effect on July 1, 2005, the start of SFY 2006. In so ruling, the hearing panel acknowledged that it was ordering "retroactive" payments. The hearing panel stayed its decision for thirty days to allow DCYF to show cause why the order for "retroactive" payments, requiring DCYF to reimburse the respondents at the new rate for the entire fiscal year, should not be enforced.

DCYF moved for either reconsideration or a stay; the respondents also moved for reconsideration. The hearing panel denied both motions to reconsider, and DCYF"s motion for a stay. As to the show cause order, based upon the evidence submitted by DCYF, the hearing panel determined that DCYF had sufficient funds to pay the newly calculated rates for the entire fiscal year, and ordered DCYF to make such payments prior to the end of SFY 2006. DCYF then sought a writ of certiorari here.

■ Review on certiorari is an extraordinary remedy, usually available only in the absence of a right to appeal, and only at the discretion of the court. *Petition of State of N.H. (State v. Campbell)*, 152 N.H. 515, 517 (2005). Because there is no statutory provision for appellate review of the hearing panel's decision on the respondents' rate appeal, a petition for a writ of certiorari is the proper vehicle for obtaining review. *Petition of Perkins*, 147 N.H. 652, 653-54 (2002). We exercise our power to grant such

writs sparingly and only where to do otherwise would result in substantial injustice. *Petition of State of N.H.*, 152 N.H. at 517.

In its petition, DCYF argues that: (1) the Budget and Trailer Bills require DHHS to pay five percent rate increases over the 2005 paid rates and not the 2005 calculated rates; (2) the hearing panel violated the doctrine of separation of powers; and (3) the hearing panel lacked authority to adjudicate the sufficiency of funds appropriated by the legislature. The respondents counter that the hearing panel correctly interpreted the Budget and Trailer Bills and that DCYF's other arguments are not preserved for our review.

■ Before addressing DCYF's first argument, we briefly review the authority of the hearing panel. We recently held that "establishing the actual residential rate for a childcare provider and determining when the rate becomes effective fall within the jurisdiction the legislature conferred upon the hearing panels." *Chase Home*, 155 N.H. at 534. Moreover, we concluded that although "the hearing panels have the authority to establish residential rates and determine when the rates become effective ... [they do not] have the authority to order DHHS to make ... payments at the recalculated rate levels." *Id.* Thus, in this case the hearing panel had the authority to establish the rates at which the respondents would be paid and the date upon which such rates would become effective. On certiorari, no party challenges the 2006 hearing panel's determination that the effective date should be July 1, 2005. Accordingly, we do not address that issue.

Having made clear that the hearing panel had authority to establish the rate for providers, we now consider whether it properly did so. We are mindful that our review is limited to whether the hearing panel acted illegally with respect to jurisdiction, authority or observance of the law or unsustainably exercised its discretion or acted arbitrarily, unreasonably or capriciously. *Petition of Perkins*, 147 N.H. at 653-54.

· The hearing panel accepted DCYF's argument that the rate setting rules were superseded by the Budget and Trailer Bills. Because no party challenges that determination, we accept that it was proper. Moreover, because no party contends that the Budget and Trailer Bills limit the authority or jurisdiction of the hearing panel, we address only the parties' arguments relative to the hearing panel's interpretation of those bills.

DCYF argues that the Budget and Trailer Bills require a five percent increase over the 2005 *paid* rate, while the hearing panel determined that the bills required an increase over the 2005 *calculated* rate. The Trailer Bill states:

For the biennium beginning July 1, 2005, the commissioner of the department of health and human services shall set rates paid to providers consistent with the operating budget appropriations allotted to pay providers in each program including any rate increases provided in the operating budget. Notwithstanding any law to the contrary or the provisions of any rule adopted pursuant to RSA 541-A, concerning rate setting, the commissioner shall establish rates that reflect appropriations for the current fiscal year by August 1. Such rates shall reflect legislative decisions to provide specific rate increases as footnoted in the operating budget. The commissioner shall report quarterly to the fiscal committee of the general court, the governor, the speaker of the house of representatives, and the president of the senate concerning the status of appropriations for payments to providers and the rates established by the department.

The footnote referenced in the Trailer Bill is contained in the Budget Bill and states:

The appropriation in Class 093 "Residential" includes $417,351 for a 5% provider rate increase in fiscal year 2006 and $1,137,016 for 5% provider rate increase in FY 2007. The appropriations for the non-residential providers include $1,433,032 for a 5% rate increase in fiscal year 2006 and $2,421,798 for a 3% rate increase in Fiscal Year 2007.

According to DCYF, the Trailer Bill caps the respondents' SFY 2006 rates at the limit imposed by appropriations from the legislature, and DCYF argues that requiring it to pay the respondents the 2005 *calculated* rate plus five percent will cause it to exceed those appropriations. Therefore, DCYF argues, because the SFY 2006 rates were capped at the amount appropriated, and the hearing panel's interpretation would require DCYF to exceed that amount, the hearing panel erred in interpreting the Budget and Trailer Bills to require a greater amount. The respondents counter that DCYF has not demonstrated that the hearing panel's decision was legally erroneous or otherwise improper.

While we agree that the Trailer Bill fixes a limit upon rate increases, it does so by stating that expenditures are to reflect and be consistent with appropriations. The requirement that an agency not spend funds beyond those appropriated by the legislature is codified in RSA 9:19 (2003). Thus, the Trailer Bill did not set a new, lower limit on expenditures. Nor does the language of the Trailer Bill provide any particular method for

establishing rates within the confines of the appropriations. The hearing panel determined that the language of the Trailer Bill "makes it clear that rates must be set to **reflect** the appropriations." This interpretation is consistent with the terms of the Trailer Bill, and is not legally erroneous.

The hearing panel rejected DCYF's argument that the cap in the Trailer Bill created a responsibility to set a low rate:

> It is the panel's position that if the rates are to **reflect** the appropriations as required by [the Trailer Bill], setting rates low and under spending the account is just as contrary to [the Trailer Bill] as exceeding the appropriation. The evidence in this case suggests that DCYF under spent the Class 93 residential appropriation [the appropriation covering the respondents] in SFY 2004 and SFY 2005, raising a question about the accuracy of DCYF's claim that it lacks the funding needed to pay [respondents] higher rates in SFY 2006.

The hearing panel's factual findings are supported by the record. The hearing panel took testimony from Dague Clark, the administrator of the Fiscal Unit of DCYF, who stated that paying all of the providers, or even some of them, at the higher rate, *i.e.*, at five percent above the 2005 calculated rate, would cause DCYF to exceed its appropriations. The hearing panel noted that the information provided by Clark was incomplete and therefore was "of little value" in determining whether the appropriations were, in fact, sufficient. Furthermore, the hearing panel noted that there was evidence that DCYF had underspent its appropriations in previous years and, therefore, it had reason to doubt DCYF's claim that it would exceed the budget by paying the respondents at the higher rates. Because the Trailer Bill did not provide any particular limitation on rates, other than that set by the amount of appropriations, and because there was evidence demonstrating that rates could be set higher than proposed by DCYF without exceeding appropriations, we find no error in the hearing panel's determination that DCYF could pay the 2005 calculated rate plus five percent without exceeding its appropriations.

DCYF contends that the hearing panel disregarded evidence that funding was insufficient to pay the rate ordered. In support of this argument, DCYF contends that a review of the Program Appropriation Unit (PAU) relating to the respondents demonstrates that paying the rate ordered by the hearing panel would cause it to exceed the available appropriation.

The PAU at issue relates to the respondents and other service providers. According to DCYF, when making its budget request for the

PAU, it based its request upon an expectation that Class 93 expenditures—those covering the respondents—would require a certain allotment of funds out of the total amount appropriated in the PAU. DCYF contends that: "Payment to the Residential Providers in SFY 2006 using the [2005 calculated rates] as a basis for the 5% increases would have required the Department to exceed its available appropriations for Residential Providers in the PAU by over a million dollars." The evidence relied upon by DCYF, however, does not necessarily demonstrate that paying the rate set by the hearing panel would exceed the amount appropriated in the PAU. Furthermore, the hearing panel had other evidence that DCYF would not exceed its appropriations and the hearing panel was within its authority to give that evidence more weight than the evidence advanced by DCYF. Thus, we find no error in the hearing panel's determination that DCYF could pay the higher rate without exceeding its appropriation.

DCYF next contends that the hearing panel erred because requiring DCYF to pay the 2005 calculated rate plus five percent would result in payments exceeding those the respondents would have received if the rates had been calculated according to the rate setting rules. Regardless of whether this statement is accurate, it is irrelevant. DCYF argued, and the hearing panel agreed, that the rate setting rules were superseded by the Trailer Bill. Therefore, it does not matter what the rate might have been under the rules.

Further, DCYF contends that its interpretation and application of the Trailer Bill was entitled to deference that the hearing panel failed to give. Under the Trailer Bill, the commissioner is required to report quarterly to the legislature and the Governor about the status of the appropriations for payments to providers. According to DCYF, the commissioner's initial report for SFY 2006 indicated that most providers would receive a five percent increase over the rates established and paid in 2005. DCYF contends that no person or entity objected to the commissioner's report and, therefore, the hearing panel ought to have deferred to it.

■ Requiring the hearing panel to defer to the commissioner's report would limit its authority, granted by statute and rule, to render decisions "relative to rates." The commissioner's report indicating an intent to provide an increase over the 2005 paid rate, as opposed to the 2005 calculated rate, is a decision "relative to rates." The hearing panel could choose whether or not, within the limit of its authority, to defer to DHHS' determination based upon its review of the relevant law and facts. Because the hearing panel did not err in its interpretation of the Trailer Bill, and properly found that DCYF could pay the newly established rate without

exceeding its appropriation, we conclude that the hearing panel did not err in not deferring to DHHS. For the above reasons, we conclude that the rate established by the hearing panel was proper and within its authority.

■ DCYF next contends that the hearing panel's decision violated the doctrine of separation of powers. DCYF contends that the hearing panel's order required payment in excess of available funds, and thereby usurped the legislature's authority to appropriate those funds. We need not decide this issue. In *Chase Home*, we determined that DHHS hearing panels have authority only to establish the relevant rates and to determine when the rates become effective. *Chase Home*, 155 N.H. at 534. Their statutory authority does not extend to requiring DCYF to render payment. *Id.* at 534-35. Because the hearing panel's authority is limited by statute and does not include the power to order payment, that portion of its decision must be vacated. Because that portion of the hearing panel's order is vacated, we need not determine whether it violated the doctrine of separation of powers by ordering payment, regardless of whether that payment would exceed appropriations.

■ DCYF's final argument is that the hearing panel lacked the authority to adjudicate the sufficiency of appropriated funds. DCYF argues that the commissioner of DHHS has authority to administer the budgets of DHHS and DCYF, as is necessary for their efficient management, within the limits of the appropriation set by the legislature. According to DCYF, by reviewing the sufficiency of available funding, the hearing panel, "in effect, transformed itself into an auditor of the Department's budget . . . ." As noted above, however, the hearing panel had the authority to review decisions relative to rates. Because DCYF's justification for the rates it set was the limitation placed upon its budget by the legislature, the hearing panel appropriately reviewed the budget and the allocations made thereunder to determine whether those rates were properly set. Thus, we conclude that the hearing panel did not act outside its jurisdiction in determining whether DCYF had sufficient funding.

As we said in *Chase Home*, we need not decide what further remedies, if any, are available to the respondents, such as whether they can obtain relief in a civil action in superior court. *Chase Home*, 155 N.H. at 535. We conclude, in the exercise of our limited review on certiorari, that the hearing panel's decisions to establish the rate at the 2005 calculated rate plus five percent, and to set the effective date of the rate at July 1, 2005,

were proper and are affirmed, but that its order requiring DCYF to render payment was beyond the scope of its authority and is vacated.

*Affirmed in part; vacated in part.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.