**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2021-0286, <u>Petition of Cellco Partnership d/b/a Verizon Wireless</u>, the court on September 9, 2020, issued the following order:**

In this petition for a writ of certiorari, <u>see</u> <u>Sup. Ct. R.</u> 11, the petitioner, Cellco Partnership d/b/a Verizon Wireless (Verizon), challenges the decision of the respondent, the Commissioner of the New Hampshire Department of Natural and Cultural Resources (DNCR), denying Verizon's application to lease space on an antenna tower located on top of Cannon Mountain in Franconia Notch State Park. We affirm.

The record supports the following facts. In February 2021, Verizon applied to DNCR "to collocate a wireless communications facility at an existing multi-user tower near the summit of [Cannon] Mountain." Verizon anticipated that it would "enter into a standard lease agreement, at fair market commercial rates, similar to the contracts of the Verizon peers with operations already in service at Cannon Mountain." In April 2021, DNCR notified Verizon that, pursuant to its "discretionary authority to enter into leases of state reservations under RSA 227-H:9," it had "determined that [DNCR] cannot accept [Verizon's] request to lease space on the Cannon Mountain Ski Area Observation Deck Facility." <u>See</u> RSA 227-H:9 (2019) ("The commissioner may make contracts for the leasing of privileges and concessions on state reservations . . . .").

Verizon requested reconsideration of DNCR's decision. In response, DNCR explained that its decision was "not a permitting/licensing decision or other similar administrative proceeding" subject to the provisions of RSA chapter 541, which allows appeals from administrative decisions under certain circumstances, RSA 541:6 (2021), but, rather, was "a discretionary decision not to enter into a lease on State land." As such, DNCR was "aware of no applicable statute invoking RSA [chapter] 541 with respect to this subject matter." DNCR reiterated that it was "not in a position to lease space to additional communications tenants at this time."

This petition followed. Verizon asserted in its petition that DNCR's decision was "unlawful and unreasonable" because it: (1) contains mistakes of fact concerning the proposed antenna attachment, equipment shelter, and "its failure to recognize the link between robust, reliable communications and public outdoor recreational uses"; (2) reflects "several erroneous interpretations and applications of" DNCR's Policy on Use and Management of DNCR Communication Facilities (Policy), including failing to recognize that Verizon's

equipment is "state of the art," presuming that Verizon is in a position to remove existing equipment from the facility, and penalizing Verizon "for not being able to reduce gear via its proposal"; (3) misapplies the Land and Water Conservation Fund (LWCF) requirements; and (4) violates the Federal Telecommunications Act of 1996 (TCA). Verizon asserts that this court has jurisdiction to hear the case pursuant to RSA 490:4 (2010) and Supreme Court Rules 10 and 11 "because no statute governs the appeal of DNCR's decision, and Verizon has no other legal remedy to appeal the decision."

Review on certiorari is an extraordinary remedy, usually available only in the absence of a right to appeal, and only at the discretion of the court. Petition of Chase Home for Children, 155 N.H. 528, 532 (2007). Certiorari requires that we determine whether the agency acted illegally with respect to jurisdiction, authority or observance of the law, or has unsustainably exercised its discretion or acted arbitrarily, unreasonably or capriciously. Id.

Verizon first argues that DNCR's Policy was contrary to its rulemaking authority under Nevins v. New Hampshire Department of Resources and Economic Development, 147 N.H. 484 (2002), and that the lack of rulemaking resulted in DNCR engaging in ad hoc decision making whereby its "failure to afford due process for existing site installations enabled DNCR to pre-determine the merits of Verizon's proposal, to create new standards of review that are not set forth in the Policy, and to make unsupported findings based on mistakes of fact and errors of law." DNCR asserts that Verizon failed to preserve these arguments.

In order to preserve an argument for review, we generally require issues to be raised at the earliest possible time because trial forums should have a full opportunity to come to sound conclusions and correct errors in the first instance. Bedford Sch. Dist. v. State of N.H., 171 N.H. 246, 250 (2018). Furthermore, in the context of an agency appeal, we have determined that issues are not properly preserved for appellate review when the record shows that, not only did the plaintiff fail to raise them initially before the administrative agency, but also failed to raise them in their appeal to this court pursuant to Supreme Court Rule 10(1)(c). See Appeal of Bosselait, 130 N.H. 604, 606-07 (1998). The same preservation requirement applies when we engage in certiorari review of an administrative agency's decision. See Petition of Parker, 158 N.H. 499, 504 (2009); see also Sup. Ct. R. 11 (2)(b), (i).

The record supports that Verizon did not raise these issues before DNCR either in its application or in its motion for rehearing. Indeed, Verizon acknowledges that "the absence of rulemaking was not directly raised in [its] Application" to DNCR. Nor did Verizon raise these issues in its petition for certiorari. Accordingly, we agree with DNCR that Verizon did not preserve these issues for our review, and we turn to consider Verizon's remaining arguments.

Verizon next argues that DNCR "misinterpreted and misapplied its Policy to the detriment of the public safety and welfare of New Hampshire citizens, whose welfare is stated as the primary goal of the Policy." Citing section II of the Policy, DNCR explained that "the ultimate Goal of the Policy is to have state-owned locations cleared of all communications appurtenances and machinery." Because the site at issue was "already at capacity," DNCR determined that "[p]rojects that result in net increases in communications equipment," as did Verizon's, "are inconsistent with the Goal of the Policy." Verizon does not challenge DNCR's paramount determination that there is no additional capacity on the facility at the Cannon Mountain site. Given, therefore, that DNCR's determination on that issue is undisputed, we are unable to conclude that its denial of Verizon's application was an unsustainable exercise of discretion or arbitrary, unreasonable or capricious.

Verizon also asserts that DNCR's decision violated federal law. According to Verizon, although the "TCA prohibits states and local governments from taking actions that prohibit or have the effect of prohibiting wireless communications services," see 47 U.S.C. § 332(c)(7)(B)(i)(II) (2018), DNCR's decision "has the effect of prohibiting Verizon from providing its service in Franconia Notch." Further, Verizon argues, because the TCA "prohibits states and local governments from unreasonably discriminating among wireless carriers," see 47 U.S.C. § 332(c)(7)(B)(i)(I) (2018), DNCR's prior approval of two other wireless carriers at the site "unreasonably and unlawfully discriminated" against it.

Section 332(c) of 47 U.S.C. governs the regulatory treatment of mobile services. 47 U.S.C. § 332(c) (2018). Subsection 7, titled "[p]reservation of local zoning authority," provides:

(A) General authority

   Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B) Limitations

   (i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—

      (I) shall not unreasonably discriminate among providers of functionally equivalent services; and

3

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. § 332(c)(7)(A), (B)(i)(I), (II) (bolding omitted).  DNCR counters that, even if the TCA applies to its nonregulatory decision not to enter into a lease with Verizon, the federal law cannot reasonably be read to mean that because DNCR previously leased space to other providers when space was available, "it must therefore lease antenna space to all."

Other than its conclusory statements that DNCR's decision had "the effect of prohibiting Verizon from providing its service in Franconia Notch" and "unreasonably and unlawfully discriminated" against it, Verizon provides no analysis of the federal statute, cites no authority interpreting and applying either the "effect of prohibiting" language in section 332(c)(7)(B)(i)(II), or the "unreasonably discriminate" language in section 332(c)(7)(B)(i)(I), or explains how the DNCR's decision constituted "regulation" of personal wireless facilities under section 332(c)(7)(B)(i).  Such undeveloped legal argument is insufficient to warrant judicial review.  See White v. Auger, 171 N.H. 660, 665 (2019).

Finally, Verizon argues that DNCR misapplied the requirements of the LWCF funding grant, thereby "wrongly decid[ing] that Verizon's proposed equipment shed would trigger a prohibited conversion of state-owned public land" under the grant.  DNCR explained in its decision, however, that "[e]ven if the proposed project were allowable under the Policy, it faces an additional hurdle due to the LWCF encumbrances in effect at Cannon Mountain." DNCR's construction of the LWCF fund requirements, therefore, was secondary to its paramount — and unchallenged — determination that there is currently no additional capacity on the facility at Cannon Mountain.  Accordingly, we decline to address Verizon's argument regarding this additional ground for denial.

We conclude that Verizon has failed to establish that, in declining to accept Verizon's request to lease space on the Cannon Mountain Ski Area Observation Deck Facility, DNCR acted illegally with respect to jurisdiction, authority or observance of the law, or unsustainably exercised its discretion or acted arbitrarily, unreasonably or capriciously.  See Petition of Chase Home, 155 N.H. at 532.

Affirmed.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

4