NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

New Hampshire Board of Medicine
Case No. 2023-0637
Citation: Appeal of Doe (Bd. of Med.), 2025 N.H. 13

APPEAL OF JOHN DOE
(New Hampshire Board of Medicine)

Argued: June 27, 2024
Opinion Issued: March 18, 2025

Rath, Young, and Pignatelli, P.C., of Concord (Adam Pignatelli on the brief and orally), for the petitioner.

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Laura E. B. Lombardi, senior assistant attorney general, on the brief and orally), for the respondent.

COUNTWAY, J.

[¶1] John Doe seeks review of orders issued by the New Hampshire Board of Medicine (Board) denying his motions to remove from the Board's website all references to an emergency suspension order issued by the Board. We affirm.

[¶2] The following facts either were found by the Board, are undisputed by the parties, or appear in the record. On October 26, 2021, the Office of Public Licensure and Certification, Division of Enforcement (OPLC) was notified

by a detective that the mother of one of Doe's juvenile patients had filed a complaint with a police department alleging that Doe had asked the juvenile inappropriate questions about sex during a medical visit. On April 8, 2022, the OPLC received a report of non-compliance from Doe's former employer notifying the Board that it had terminated Doe's employment following the receipt of complaints by three staff members that on three separate occasions Doe had made comments to them that were sexual in nature, and after a non-juvenile female patient had stated that Doe had touched her inappropriately and made sexually inappropriate comments during office visits.

[¶3] During its investigation of the reports, the OPLC notified Doe about the allegations, and, through his attorney, Doe submitted responses to the allegations and other documentation. Thereafter, Doe was informally notified that the Board would consider the allegations at its regularly scheduled monthly meeting on May 4, 2022. Doe's request to attend the meeting was denied. On May 6, 2022, the Board issued a narrative order of emergency suspension pursuant to RSA 329:18-b, finding that there were sufficient facts to prove that Doe posed an imminent danger to life or health, and suspending his license. See RSA 329:18-b (2017) (repealed by Laws 2023, 212:20, VI, effective October 3, 2023) (stating, in relevant part, that "[i]n cases involving imminent danger to life or health, the board may order suspension of a license pending [a] hearing for a period of no more than 120 days"). On the same day, the Board issued a notice of emergency hearing scheduling an adjudicative suspension hearing for May 11, 2022. Both the suspension order and the hearing notice are posted on a website maintained by the OPLC that includes a page for the Board of Medicine.

[¶4] Doe filed a request for a continuance of no longer than one month. The Board granted the request, and the hearing was rescheduled for June 1, 2022. The scope of the adversarial hearing was limited to whether the "temporary suspension should remain in effect, pending a full disciplinary adjudication." Doe attended the hearing with counsel, testified, presented exhibits, and called a witness. The next day, the Board issued an order vacating the emergency suspension of Doe's license. On July 19, 2022, the Board issued a narrative order finding that hearing counsel had failed to meet his burden of proving by a preponderance of the evidence that Doe's practicing medicine pending an adjudication posed an imminent danger to life or health. The Board also stated:

> To be clear, the Board is nonetheless troubled by the allegations. Additionally, the Board recognizes that the investigation is ongoing and reserves further judgment based upon all the evidence that investigation yields. What is apparent now is the matter warrants

2

scheduling a full disciplinary adjudicatory hearing to occur after completion of investigation by the OPLC Division of Enforcement.

Both the June 2 and July 19 orders are posted on the OPLC website.

[¶5] On January 30, 2023, prior to a full disciplinary adjudicatory hearing, Doe filed a motion to remove all references to the emergency suspension from the website, including the May 6 order and notice, and the June 2 order. He alleged in his motion that the availability of these orders online had negatively affected him professionally and personally and had "resulted in extreme social isolation." The Board denied his motion on March 1, 2023. A little over one month later, Doe voluntarily surrendered his license; thereafter, the voluntary surrender of license was posted on the website. On April 21, 2023, Doe submitted a renewed motion to remove all references to the emergency suspension order from the OPLC website. He asserted in his motion that his reputation had been adversely affected by the Board's ex parte proceedings, and that "the lack of due process afforded in the ex parte proceedings should result in the Board removing all references to the proceeding from its website and his physician profile." On September 5, 2023, the Board issued an order denying the requested relief. Doe filed a motion to reconsider, asserting that his reputational interest should be protected from "unnecessary invasions," and that there is "limited public interest[] in publishing these types of orders as to physicians who no longer hold licenses." On October 4, 2023, the Board issued a lengthy narrative order denying his motion to reconsider.

[¶6] Before turning to the merits, we determine our jurisdiction over the matter. Doe filed his appeal by petition pursuant to RSA 541:6 and Supreme Court Rule 10. The Board argues that Doe's claims are not appealable under RSA chapter 541.

[¶7] "Unless some reference is made to chapter 541 in any given statute, an appeal under the provisions of chapter 541 is not authorized by law." Petition of Hoyt, 143 N.H. 533, 534 (1999) (quotation omitted). During most of the time this matter was pending before the Board, RSA chapter 329 provided that "[d]isciplinary or non-disciplinary remedial action taken by the board under [RSA 329:17] may be appealed to the supreme court under RSA 541." RSA 329:17, VIII (2017) (repealed by Laws 2023, 212:20, VI, effective October 3, 2023). This provision of the chapter was repealed effective October 3, 2023, one day before the Board issued its order denying Doe's motion to reconsider. Prior to the repeal of that provision, however, the legislature recodified the law governing the Office of Professional Licensure and Certification. See RSA ch. 310 (Supp. 2024) (effective July 15, 2023). The recodification is designed to promote efficiency, see RSA 310:1, and the law provides that the boards within the OPLC include the Board of Medicine. See RSA 310:2, II(x). The law

3

includes a provision, similar to the repealed RSA 329:18-b, authorizing a board to order immediate suspension of a license or certification pending an adjudicative proceeding in certain circumstances.  See RSA 310:12, IV (Supp. 2024).  It also includes a provision stating, in relevant part:

> II. Any person who has been disciplined by a board shall have the right to petition in writing for a rehearing within 30 days of receipt of the original final decision.

> III. Appeals from a decision on rehearing shall be by appeal to the supreme court pursuant to RSA 541, except as specified in RSA 674:34 or other applicable statutes.  No sanction shall be stayed by the board during an appeal.

RSA 310:14 (Supp. 2024).

[¶8] Doe agreed to voluntarily surrender his license while the misconduct allegations remained under investigation; therefore, he does not appeal disciplinary action or non-disciplinary remedial action by the Board.  Rather, he appeals the order denying his request to remove from the Board's website documents relating to the order suspending his license pursuant to RSA 329:18-b.  Neither RSA 329:17, VIII nor RSA 310:14 authorizes an appeal under RSA chapter 541 in these circumstances.  We disagree with Doe that the posting of the orders on the website "is attendant to discipline" and that to continue to maintain the orders on the website "is a part of the discipline."  The Board asserts, and Doe does not dispute, that "the OPLC maintains a website that includes a page for the Board of Medicine," and that "[t]he Board's website includes a page listing all disciplinary actions taken by the Board, as well as a link to an online license verification page that the public can use to search the disciplinary history of a particular licensee."  The OPLC's posting of these orders is consistent with the OPLC's statutory responsibility over the "administrative, clerical, business processing and record keeping function" of individual boards, see RSA 310:1, and serves the Board's obligation to protect the public.  See RSA 329:1-aa (2017).  Accordingly, we conclude that we do not have RSA chapter 541 jurisdiction, and treat this appeal as a petition for a writ of certiorari.  See Appeal of Dumont, 135 N.H. 23, 25 (1991) ("Although the petitioners have mistaken their remedy, we will treat their appeal as a petition for writ of certiorari.").

[¶9] "Certiorari is an extraordinary remedy that is not granted as a matter of right, but rather at the court's discretion."  Petition of N.H. Div. of State Police, 174 N.H. 176, 180 (2021).  Our review of an administrative agency's decision on a petition for a writ of certiorari entails examining whether the agency "has acted illegally with respect to jurisdiction, authority or observance of the law or has unsustainably exercised its discretion or acted

4

arbitrarily, unreasonably or capriciously." Petition of Chase Home for Children, 155 N.H. 528, 532 (2007). "We exercise our power to grant such writs sparingly and only where to do otherwise would result in substantial injustice." Id.

[¶10] Doe argues that the timeline of the Board's processing of the disciplinary matter demonstrates that the Board did not treat the matter as an emergency, and that the Board therefore violated his due process rights when it temporarily suspended his license ex parte, and then refused to "remedy" the due process violation by removing the emergency suspension order and related documents from its website. The Board contends that Doe waived any due process claim he might have had relative to the emergency suspension procedures when he voluntarily surrendered his license, and that, even if Doe did not waive his challenge to the Board's emergency suspension procedures, he has failed to demonstrate that the Board violated his procedural due process rights. We assume without deciding that Doe has not waived his constitutional claim, and conclude, for the reasons that follow, that he has failed to demonstrate that the Board violated his State and Federal procedural due process rights.

[¶11] We first address Doe's claims under the State Constitution, and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983). "Because this issue poses a question of constitutional law, we review it de novo." State v. Veale, 158 N.H. 632, 636 (2009) (quotation omitted).

[¶12] Part I, Article 15 of the New Hampshire Constitution provides that "[n]o subject shall be . . . deprived of his property, immunities or privileges . . . or deprived of his life, liberty, or estate, but by . . . the law of the land." N.H. CONST. pt. I, art. 15. We have held that "law of the land" means due process of law. Veale, 158 N.H. at 636. "The ultimate standard for judging a due process claim is the notion of fundamental fairness," which "requires that government conduct conform to the community's sense of justice, decency and fair play." Id. (quotation omitted).

[¶13] "We engage in a two-part analysis [when] addressing procedural due process claims: first, we determine whether the individual has an interest that entitles him or her to due process protection; and second, if such an interest exists, we determine what process is due." Gantert v. City of Rochester, 168 N.H. 640, 647 (2016) (quotation omitted). Because there is no dispute that a physician has a constitutionally protected interest in his license to practice medicine, and in his reputation as related to his profession, we turn to whether the procedures provided Doe with appropriate safeguards against wrongful suspension of his license and damage to his reputation. See Reiner's Case, 152 N.H. 163, 165 (2005).

5

[¶14] "The fundamental requisite of due process is the right to be heard at a meaningful time and in a meaningful manner." Appeal of Portsmouth Trust Co., 120 N.H. 753, 758 (1980). "No rigid taxonomy exists for evaluating the adequacy of state procedures in a given case; rather 'due process is flexible and calls for such procedural protections as the particular situation demands.'" González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir. 2011) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). The United States Supreme Court has recognized "on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." Gilbert v. Homar, 520 U.S. 924, 930 (1997). "In matters of public health and safety, the Supreme Court has long recognized that the government must act quickly. Quick action may turn out to be wrongful action, but due process requires only a postdeprivation opportunity to establish the error." Camuglia v. The City of Albuquerque, 448 F.3d 1214, 1220 (10th Cir. 2006).

[¶15] Accordingly, to determine both whether a pre-deprivation hearing is required and what process is due, "we balance three factors: (1) the private interest that is affected; (2) the risk of erroneous deprivation of that interest through the procedure used and the probable value of any additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens resulting from additional procedural requirements." Gantert, 168 N.H. at 647-48; see also González-Droz, 660 F.3d at 13. "Whether the deprivation was, in fact, justified is not an element of the procedural due process inquiry." González-Droz, 660 F.3d at 13.

[¶16] Here, the Board temporarily suspended Doe's license on May 6, 2022, pursuant to RSA 329:18-b, and scheduled an adjudicative suspension hearing for May 11, 2022, which was later rescheduled to June 1, 2022, at Doe's request. Doe was provided with a full panoply of procedural rights at the June 1, 2022 hearing. While the Board's suspension of Doe's license to practice medicine deprived Doe of a constitutionally protected property interest, the suspension was provisional and, pursuant to the Board's administrative rules, Doe was entitled to the commencement of an adjudicatory hearing within ten days to determine the propriety of the suspension. See N.H. Admin. R., Med 409.01(a). Although a risk of erroneous deprivation may exist when a determination is made without the licensee having the opportunity to appear and state his or her defense directly to the Board, that risk is tempered when, as here, the licensee had the opportunity to, and did, submit information to the Board that he knew would be considered in determining whether to immediately suspend his license. Furthermore, the State's interest in protecting the public from an imminent danger to life or health is, as we have noted, significant, and will often justify the use of summary procedures. See, e.g., Reiner's Case, 152 N.H. at 166 ("prompt suspension of indicted attorneys is necessary in some instances to protect the public and preserve the integrity

6

of the legal profession"); <u>Bragg v. N.H. Div. of Motor Vehicles</u>, 141 N.H. 677, 678-79 (1997) (plaintiff was not denied due process where driver's license was immediately suspended upon his refusal to submit to a chemical test for DWI and a hearing to review the license suspension was held a month later).  As the First Circuit Court of Appeals has noted, "in cases involving public health and safety and the integrity of professional licensure, the force of the[] factors" of the possible risk of erroneous deprivation and the possible benefit of additional safeguards "is significantly diminished by the ready availability of prompt post-deprivation review."  <u>González-Droz</u>, 660 F.3d at 14.

[¶17] Doe does not dispute the legality or constitutionality of the Board's taking immediate action where public safety may be threatened.  He concedes that there might be some circumstances in which the Board must proceed <u>ex parte</u>, but argues that there "should be some kind of showing to show why the Board must proceed <u>ex parte</u>."  We understand Doe to argue that the facts of this case demonstrate that there was no need to proceed <u>ex parte</u> for two reasons.  First, he notes that the <u>ex parte</u> order was overturned four weeks later, "at the first opportunity for an adversarial hearing" when the Board found that hearing counsel had not met his burden to show by a preponderance of the evidence that there was an imminent danger to life or health.  Second, he asserts that the Board did not treat the matter as an emergency because it did not act on the allegations immediately, and waited "nearly a month" to consider the matter at its regularly scheduled monthly meeting and then waited two days after its meeting to temporarily suspend his license.

[¶18] Regarding the first point, we are not persuaded.  Implicit in the United States Supreme Court's statement that when the State must act quickly, "postdeprivation process satisfies the requirements of the Due Process Clause," <u>Gilbert</u>, 520 U.S. at 930, is an understanding that a determination regarding the propriety of the State's action can be delayed.  <u>See</u> <u>Camuglia</u>, 448 F.3d at 1221.  That the State's action is later found to be unjustified does not factor into the procedural due process inquiry.  <u>González-Droz</u>, 660 F.3d at 13.  Regarding the second point, we do not agree that, because the Board or its staff did not schedule a special meeting to consider these allegations or otherwise expedite its review of the matter, it was precluded by due process from acting prior to scheduling another evidentiary hearing when, following review of the materials at its regularly scheduled meeting, it found that an imminent danger to public health or safety existed.  Even if we were to accept Doe's proposition that in cases in which public safety may be endangered there must be "some kind of showing" about why the Board must proceed <u>ex parte</u>, we are not persuaded that the facts of this case demonstrate that there was no need for the Board to proceed <u>ex parte</u>, once it considered the allegations.

[¶19] We conclude that the Board did not violate Doe's due process rights under Part I, Article 15 of the New Hampshire Constitution when it temporarily suspended his license after finding, ex parte, that there were sufficient facts to prove that he posed an imminent danger to life or health. Because the State Constitution is at least as protective as the Federal Constitution in these circumstances, we reach the same result under the Federal Constitution. See Veale, 158 N.H. at 645.

[¶20] We now consider whether the Board "unsustainably exercised its discretion or acted arbitrarily, unreasonably or capriciously," Petition of Chase Home for Children, 155 N.H. at 532, when it denied Doe's request to remove the emergency suspension order and related documents from its website.

[¶21] The Board represents, and Doe does not dispute, that the Board and the OPLC have determined that all disciplinary orders should be posted to the website and that all of the orders posted are orders that must also be reported to the national databank, including emergency suspension orders. If the order is later vacated, as occurred in this case, the order vacating the suspension order is also posted. Therefore, while the Board and the OPLC exercised some discretion in the adoption of the policy dictating what types of orders will be posted, the Board represents that it and OPLC exercise very little discretion regarding whether to post a particular order to the website. The posting of these orders, as the Board points out, is consistent with the Board's constitutional and statutory obligation to ensure the greatest possible access to public records and to remain accountable to the public for its actions. See N.H. CONST. pt. I, art. 8; RSA 91-A:4 (Supp. 2024); RSA 329:8 (Supp. 2024). Posting the orders also serves the Board's obligation to protect the public. See RSA 329:1-aa (2017).

[¶22] Doe does not dispute that the documents at issue are public records subject to disclosure under the Right-to-Know Law and RSA 329:8. Rather, he argues that unless the orders are removed from the website, he will continue to "suffer damage to his reputation as well as loss of alternative careers and associated income, job instability, and ongoing emotional distress and isolation." While we have recognized that an individual's reputational interest and right to the protection of his good name are liberty interests, the deprivation of which is deserving of due process, see Veale, 158 N.H. at 639, as we have concluded, Doe was afforded sufficient due process in this case. Furthermore, the public's interest in having access to the Board's disciplinary orders outweighs that interest, particularly where, as here, subsequent orders vacating the emergency suspension are also posted, allowing members of the public to form their own opinions regarding the matter. To the extent that he so argues, we disagree with Doe that the orders should be removed from the website because they make public alllegations that he asserts are unfounded. Doe could have elected to allow the matter to proceed to a full disciplinary

8

hearing to determine whether the allegations were, in fact, unfounded, but he instead opted to voluntarily surrender his license in resolution of the disciplinary matter. Under these circumstances, we cannot say that the Board "unsustainably exercised its discretion or acted arbitrarily, unreasonably or capriciously" when it denied Doe's request to remove orders it had posted consistent with its policy. Petition of Chase Home for Children, 155 N.H. at 532.

[¶23] Because we conclude that Doe's procedural due process rights were not violated, and that the Board did not act arbitrarily, unreasonably or capriciously, we affirm the Board's decision not to remove all references to the May 4, 2022 and June 2, 2022 orders and the May 6, 2022 notice of emergency hearing from its website and from Doe's physician profile.

Affirmed.

MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred.

9