Rockingham
No. 2009-455

PRISCILLA TYLER

v.

HANNAFORD BROTHERS d/b/a HANNAFORD FOOD & DRUG

Argued: February 17, 2010
Opinion Issued: November 30, 2010

*Kevin M. Leach*, of Bow, on the brief, and *Legal Resource Strategies, PLLC*, of Manchester (*Nancy A. DeAngelis* on the brief and orally), for the plaintiff.

*Wadleigh, Starr & Peters, PLLC*, of Manchester (*Michael R. Mortimer* and *Gregory M. Sargent* on the brief, and *Mr. Mortimer* orally), for the defendant.

BRODERICK, C.J. The plaintiff, Priscilla Tyler, appeals an order of the Superior Court (*McHugh,* J.) applying collateral estoppel to findings made by the New Hampshire Compensation Appeals Board (Board) in a subsequent civil action against the defendant, Hannaford Brothers (Hannaford). We reverse and remand.

The record contains the following facts. On June 27, 2003, while employed by Suray Promotions, Inc. (Suray) as a food product demonstra-

tor, the plaintiff slipped on a wet floor at Hannaford's supermarket in Raymond, injuring her back. She filed a workers' compensation claim and began receiving benefits for temporary total disability. In 2006, she filed a lawsuit against Hannaford, alleging that because it negligently allowed water to puddle on the floor, she slipped and fell, injuring her lumbar spine and suffering permanent total disability.

In late December 2006, while the civil action against Hannaford was pending, Atlantic Mutual Insurance Company (Atlantic Mutual), Suray's workers' compensation insurance carrier, filed a request with the New Hampshire Department of Labor to reduce or terminate the plaintiff's weekly workers' compensation benefits alleging that she had an earning capacity. *See* RSA 281-A:48 (2010). The request was denied by a hearing officer and Atlantic Mutual filed a *de novo* appeal with the Board. On September 17, 2007, following a hearing, the Board found that the plaintiff had suffered two work-related injuries to her back: the first in 1985, the second in June 2003. For both injuries, her treating physician was Dr. Palacio. The Board found that the history and treatment of the plaintiff's first injury was significant. In January 1993, when the plaintiff had reached a medical endpoint regarding treatment for her 1985 back injury, Dr. Palacio opined that she had a work capacity with limitations " '[that] are quite restrictive and encompassing' . . . includ[ing] no stooping, bending, twisting, etc., no lifting more than five to ten pounds, limited walking and the need to change positions frequently . . . ." The plaintiff's 1985 workers' compensation claim was settled for a lump sum in 1994 and the plaintiff had no further medical treatment until her injury in 2003.

The Board found that the plaintiff

> returned to work soon after the [1994] settlement. During the summer seasons of 1995 through 2002, she worked as a beach attendant and later a lifeguard. Between 1996 and 2000, she worked as a traffic officer. From 1998 to 2000, she worked as a special education aide for a 13 year old boy. From 2001 until her injury in 2003, she worked as a product demonstrator in super-markets for Suray. In that capacity, she would cook or prepare a snack and pass out samples. She was required to lift boxes of product and move microwaves, toaster ovens and blenders. This certainly was beyond a sedentary job.

Following her fall in June 2003, the plaintiff saw her primary care physician. She also saw a second physician who prescribed physical therapy, from which she was released in August. Thereafter, the plaintiff did not seek medical treatment again until 2005. In November of that year, Dr. Palacio performed surgery on her back. In January 2007, Dr. Palacio

issued an opinion in which he again described her limited work capacity. The Board found that "[h]er limitations were almost exactly the same as he had imposed upon her in January of 1993." The Board found "not credible" the plaintiff's claim that she remained totally disabled as a result of the June 2003 injury. The Board stated that

> [t]he carrier has proven that with Dr. Palacio's assessment of January [3], 200[7], the [plaintiff's] condition had changed and retu[r]ned to as it was before the 2003 injury. Dr. Palacio, as he had in 1994, opined that the [plaintiff] has a work capacity. With that same capacity, [the plaintiff] has shown, through her employment history between her lump sum settlement and her 2003 fall, that she has an earning capacity with Dr. Palacio's restrictions. The claimant shall receive indemnification benefits at the diminished earning capacity rate, effective the date of this decision.

After the Board's decision, the plaintiff filed a motion *in limine* to "preclude the defendant from using a Workers' Compensation Appeals Board decision reducing [her] benefits to the diminished earnings capacity rate" in the civil action against Hannaford. Because the plaintiff indicated that she intended to appeal the Board's decision to this court, the trial court granted the plaintiff's motion on the basis that, due to the appeal, the Board's findings would not become final, if at all, until after the negligence case went to trial.

We declined, however, to accept the plaintiff's appeal of the Board's decision and Hannaford subsequently filed a motion *in limine* to limit the scope of expert testimony and extent of the plaintiff's claimed damages. Specifically, Hannaford sought to preclude the plaintiff from introducing any claim, evidence or testimony from herself or experts that she had "ongoing disability," "inability to perform gainful employment," or "loss of income, loss of earning capacity, or loss of future wages" caused by the June 27, 2003 fall at Hannaford's, on or after September 17, 2007. The trial court granted the motion, stating:

> [T]he Worker's Compensation Appeal Board proceeding addressed the same issue for which the doctrine of collateral estoppel is being argued as applicable in this case, namely the extent of the plaintiff's disability. The issue before the Board was whether or not the plaintiff was still disabled at the time of the hearing and if so whether that disability was due to the fall at the defendant's supermarket on June 27, 2003. The Board found that the plaintiff's condition had changed and had returned to where it was before the 2003 injury. . . .

[T]he Board's decision was a final decision on this limited issue. An appeal was taken of that decision by the plaintiff but our Supreme Court refused to accept it and therefore that decision stands. The plaintiff had an opportunity to and did appear in the worker's compensation case and in fact she was represented therein by the same attorney who represents her in this litigation. It is also clear that the Board's finding was essential to it[s] ultimate decision on the issue of disability and causation.

Upon review of all pleadings filed, the Court finds and rules that . . . the plaintiff is herein prevented from offering any evidence or argument that she suffered any disability related to her fall at the defendant's supermarket at any time on or after September 17, 2007, the date of the Board's decision.

. . . [T]he Court . . . finds and rules that the plaintiff is prohibited in her jury trial from offering any evidence to suggest that she is disabled or has or will suffer any loss of income or earning capacity on or after September 17, 2007.

The trial court denied the plaintiff's motion for reconsideration, stating that she "must accept the finding that her medical condition after the date of the [Board's] decision on 9/17/[07] is the same as it was the day before her fall on 6/27/03." The court also denied her request for permission to file an interlocutory appeal on this issue.

The parties subsequently agreed to submit the case to binding arbitration. On March 5, 2009, the trial court issued an order that "at the time of the arbitration the plaintiff shall not be permitted to put on any evidence to suggest that she has suffered injuries beyond September 17, 2007. Thus, any claims for potential future surgery shall not be presented to the arbitrator." In a decision dated March 29, 2009, the arbitrator found Hannaford eighty-five percent at fault and the plaintiff fifteen percent at fault. The arbitrator stated: "Constrained by [the trial court's] ruling that 'plaintiff is prohibited . . . from offering any evidence to suggest that she is disabled or has or will suffer any loss of income or earning capacity after September 17, 2007,' . . . the Arbitrator finds the total amount of plaintiff's damages to be $160,000." Accordingly, the arbitrator awarded the plaintiff $136,000.

The plaintiff raises five issues on appeal. She argues that by applying collateral estoppel the trial court: (1) erred as a matter of law; (2) nullified her right to pursue damages under RSA 281-A:13 (2010); (3) violated her right to a jury trial under Part I, Article 20 of the New Hampshire Constitution; (4) violated her right to recourse in the law for her personal

injuries under Part I, Article 14 of the New Hampshire Constitution; and (5) violated her right to due process under Part I, Article 15 of the New Hampshire Constitution.

■ The plaintiff first argues that the trial court erred as a matter of law by applying collateral estoppel to limit the scope of her damages. Under certain circumstances, collateral estoppel may preclude the relitigation of findings made by an administrative board when: (1) the issue subject to estoppel is identical in each action; (2) the first action resolved the issue finally on the merits; (3) the party to be estopped appeared in the first action or was in privity with someone who did; (4) the party to be estopped had a full and fair opportunity to litigate the issue; and (5) the finding at issue was essential to the first judgment. *Farm Family Mut. Ins. Co. v. Peck*, 143 N.H. 603, 605 (1999). "The policy behind collateral estoppel includes considerations of judicial economy and finality in our legal system to avoid repetitive litigation." *Id.* at 607. The applicability of collateral estoppel is a question of law that we review *de novo. Appeal of Wingate*, 149 N.H. 12, 14 (2002).

The plaintiff argues that the Board's statement that her condition had changed and returned to what it was before the 2003 injury was not a finding because it conflicts with the Board's decision to continue her disability benefits. She further argues that even if it was a finding, it was not essential to the Board's judgment. Hannaford argues that the statement was necessary for the Board "to find that she was entitled to the [diminished earning capacity] rate because she remained partially disabled but the partial disability was no greater than the disability suffered before the 6/27/03 injury."

Atlantic Mutual's petition to reduce or terminate the plaintiff's weekly workers' compensation benefits based upon her alleged earning capacity was filed pursuant to RSA 281-A:48. That statute provides in part,

> I. Any party at interest with regard to an injury . . . may petition the commissioner to review a denial or an award of compensation . . . by filing a petition with the commissioner . . . upon the ground of a change in conditions, mistake as to the nature or extent of the injury or disability, fraud, undue influence, or coercion. . . .
>
> II. Upon the filing of a petition and after notice to all interested parties and hearing, the commissioner shall enter an order, stating the reasons therefor, either:
>
> (a) Granting or denying an original award of compensation if none has previously been paid; or

(b) Ending, diminishing, or increasing the compensation previously paid or fixed by award . . . .

III. If a petitioner files for reducing or for ending compensation, the petitioner shall submit along with the petition medical evidence that the injured employee is physically able to perform his or her regular work or is able to engage in gainful employment. . . .

Atlantic Mutual claimed that the plaintiff's condition had changed and that she had an earning capacity. The plaintiff claimed total disability and an inability to return to work. The issue before the Board, therefore, was whether the plaintiff's condition had changed, thereby supporting a termination or reduction in her workers' compensation benefits. On that issue, the Board found that the plaintiff has shown, through her employment history "that she has an earning capacity with Dr. Palacio's restrictions." Accordingly, the Board concluded that Atlantic Mutual had proven that the plaintiff "has an earning capacity" and reduced her workers' compensation benefits from temporary total disability to the diminished earning capacity rate.

■ In order for the doctrine of collateral estoppel to apply, all five prerequisites must be satisfied, including that the issue subject to estoppel was essential to the first judgment. "If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta . . . ." RESTATEMENT (SECOND) OF JUDGMENTS § 27 comment *h* at 258 (1982).

■ The only issue before the Board was whether, at the time when Atlantic Mutual's petition for a termination or reduction in benefits was filed, the plaintiff's earning capacity had changed compared to her condition *after* the 2003 injury. In 2003, following her fall at Hannaford Brothers, the plaintiff was totally disabled. As the Board found, in 2007 the plaintiff was no longer suffering total disability from the fall in 2003 but had "an earning capacity," albeit at the diminished earning capacity rate. The Board's ancillary observation comparing her 2007 condition to her pre-2003 injury condition is akin to dicta and cannot be deemed essential to its judgment and is, therefore, not entitled to preclusive effect. See Petition of Gilpatric, 138 N.H. 360, 363 (1994).

The trial court ruled that based upon collateral estoppel, the plaintiff was prohibited from "offering any evidence to suggest that she [was] disabled or ha[d] or [would] suffer any loss of income or earning capacity on or after September 17, 2007." Because the Board's essential finding was that the

plaintiff was no longer suffering temporary total disability but was entitled to the diminished earning capacity rate for partial disability, we hold that the trial court's ruling was erroneous as a matter of law. Because of our holding, we find it unnecessary to address the plaintiff's other arguments.

*Reversed and remanded.*

DALIANIS, DUGGAN and HICKS, JJ., concurred.