Department of Health and Human Services
No. 2010-456

PETITION OF PATRICIA M. KALAR
(New Hampshire Department of Health and Human Services)

Argued: May 12, 2011
Opinion Issued: August 11, 2011

Patricia M. Kalar, by brief and orally, *pro se*.

*Michael A. Delaney*, attorney general (*Lisa M. English*, attorney, on the brief and orally), for the State.

CONBOY, J. The petitioner, Patricia M. Kalar, has petitioned for a writ of certiorari, *see* SUP. CT. R. 11, challenging the reduction of her benefits by the respondent, the New Hampshire Department of Health and Human Services (department), pursuant to the Food Stamp Act. *See* 7 U.S.C. § 2011 (2006); RSA 161:2, XIII (Supp. 2010). We affirm.

The record supports the following facts. The petitioner is the disabled mother of two disabled sons. She has received assistance under the Food Stamp Act since at least April 2006. In July 2006, the department conducted an inquiry into the petitioner's income and expenses for the purpose of calculating her food stamp benefits. Following this inquiry, the department issued a Notice of Decision (NOD), which reduced the petitioner's monthly food stamp allotment based on the denial of certain claimed income deductions. The petitioner then requested a "fair hearing" before the department. *See* RSA 126-A:5, VIII (Supp. 2010). After a pre-hearing conference, however, the department ultimately permitted the disputed deductions and reinstated the petitioner's original food stamp allotment. No hearing was held at that time.

In July 2008, the department again conducted an inquiry into the petitioner's income and expenses as part of the mandatory, periodic "recertification" process for determining the petitioner's food stamp benefits. *See* RSA 161:2, XIII; 7 C.F.R. § 273.14(a) (2011); N.H. ADMIN. RULES, He-W 746.02. Following this process, the department permitted expense deductions totaling $2024.35 per month from the petitioner's income, which resulted in a food stamp allotment of $463 monthly. After a subsequent recertification inquiry in February 2009, however, the department issued a March 2009 NOD that reduced the petitioner's food stamp allotment to $87 per month.

In its decision, the department explained that the reduction in the petitioner's food stamp benefits occurred because various expenses deducted from the petitioner's income were not permissible medical deductions under the federal regulations governing the Food Stamp Act. The petitioner objected to this determination, asserting that the expenses were, in fact, medically necessary and permissible as "excess medical deductions." *See* 7 C.F.R. § 273.9(d)(3). Specifically, she asserted that private school tuition and school transportation expenses for her sons, expenses incurred for transportation to medical appointments for herself and her sons, cellular telephone service expenses, and expenses related to bowling and other sports activities for her sons were all medically necessary and, therefore, entitled to treatment as "excess medical deductions" under the federal regulations. Alternatively, the petitioner argued that the types of deductions found impermissible by the department had previously been reviewed and found to be permissible following the 2006 pre-hearing

conference with the department. The petitioner argued, therefore, that the department was bound by its 2006 determination to permit such deductions.

The petitioner appealed the March 2009 NOD and requested a fair hearing by the department. The hearings officer upheld the department's decision that private school tuition, school transportation expenses, cellular telephone service expenses, and bowling and other sports activities expenses failed to qualify as excess medical deductions under the federal regulations. The hearings officer found, however, that transportation to and from medical appointments did qualify as an excess medical deduction, at a rate of $.21 per mile, and reversed the department's decision on that issue.

The petitioner requests that we reverse the hearings officer's decision, arguing that the hearings officer erred by: (1) finding that her sons' school tuition and expenses relating to school transportation, cellular telephone services, and bowling and other sports activities did not qualify as excess medical deductions; (2) failing to rule that the department was barred from disallowing those expenses because of its 2006 allowance of such deductions; and (3) failing to conclude that the department discriminated against her on the basis of disability. We address each argument in turn.

■ "The only judicial review of a fair hearings decision issued by the [department] is by petition for a writ of certiorari." *Petition of Walker*, 138 N.H. 471, 473 (1994). Review on certiorari is an extraordinary remedy, usually available only in the absence of a right to appeal, and only at the discretion of the court. *Petition of Chase Home for Children*, 155 N.H. 528, 532 (2007). Our review of an administrative agency's decision on a petition for writ of certiorari is limited to determining whether the agency has acted illegally with respect to jurisdiction, authority or observance of the law, or has unsustainably exercised its discretion or acted arbitrarily, unreasonably or capriciously. *Id.* We exercise our power to grant such writs sparingly and only where to do otherwise would result in substantial injustice. *Id.*

The federal government enacted the Food Stamp Act of 1964 in an attempt to raise the level of nutrition in low-income households. *See* 7 U.S.C. § 2011. The New Hampshire legislature amended RSA 161:2 in 1974 to include section XIII, which states that the department "shall . . . [d]evelop and administer a food stamp program within the state under the provisions of the Federal Food Stamp Act of 1964 . . . and in accordance with Federal Regulations duly promulgated by the United States Department of Agriculture and the United States Department of Health, Education and Welfare." RSA 161:2, XIII.

Federal regulations permit certain deductions from a participant's income in calculating a household budget under the Food Stamp Act. 7 C.F.R. § 273.9(d). The deductions at issue in this case relate to a category of deductions designated as "excess medical deductions," which are defined as "that portion of medical expenses in excess of $35 per month, excluding special diets, incurred by any household member who is elderly or disabled . . . ." 7 C.F.R. § 273.9(d)(3).

The petitioner first argues that her sons' private school tuition and expenses relating to school transportation, cellular telephone services, and bowling and other sports activities should be permitted as excess medical deductions from her income. We disagree.

An "excess medical deduction" is defined as follows:

(i) *Medical* and dental *care* including psychotherapy and rehabilitation services *provided by a licensed practitioner authorized by State law or other qualified health professional.*

(ii) Hospitalization or outpatient treatment, nursing care, and nursing home care. . . .

(iii) Prescription drugs when prescribed by a licensed practitioner authorized under State law and other over-the-counter medication (including insulin) when approved by a licensed practitioner or other qualified health professional; in addition, costs of medical supplies, sick-room equipment (including rental) or other prescribed equipment are deductible;

(iv) Health and hospitalization insurance policy premiums. . . .

(v) Medicare premiums . . . .

(vi) Dentures, hearing aids, and prosthetics;

(vii) Securing and maintaining a seeing eye or hearing dog . . . .

(viii) Eye glasses prescribed by a physician . . . .

(ix) *Reasonable cost of transportation and lodging to obtain medical treatment or services;*

(x) Maintaining an attendant, homemaker, home health aide, or child care services, housekeeper, necessary due to age, infirmity, or illness. . . .

7 C.F.R. § 273.9(d)(3)(i)-(x) (emphases added).

■ Because the petitioner's sons' school tuition does not fall under any of the ten categories listed as allowable excess medical deductions, we conclude that the hearings officer did not act either illegally or unreasonably in disallowing the tuition expenses as deductions. *See Petition of Chase*, 155 N.H. at 532. Further, because tuition expenses do not constitute excess medical expenses entitled to deductions, any transportation cost associated with such schooling is also not allowable as an excess medical deduction.

■ Similarly, the petitioner's expenses for bowling and other extracurricular sports activities of her sons are not allowable deductions because they do not fall under any of the aforementioned categories. *See* 7 C.F.R. § 273.9(d). Although the petitioner argues that bowling and other sports activities were "prescribed" by medical professionals as treatment for her sons' medical needs "as a form of physical therapy," it is undisputed that these "services" were not provided by "a licensed practitioner authorized by State law or other qualified health professional," as required by the federal regulations. *See* 7 C.F.R. § 273.9(d)(3)(i).

■ As to the petitioner's cellular telephone expenses, such are plainly not listed in the federal regulations as allowable excess medical deductions. The petitioner concedes that she receives a deduction for telephone service as part of her utility expense, and nothing within the regulations specifies cellular telephone service expenses as allowable medical deductions. Accordingly, the hearings officer's decision to disallow the deduction of these expenses was neither illegal nor unreasonable. *See Petition of Chase*, 155 N.H. at 532.

The petitioner next argues that because the department permitted the petitioner, in the past, to deduct the disputed categories of expenses from her income for the purpose of determining her food stamp benefits, the department cannot now rely on the federal regulations to disallow such expenses as deductions.

■ To the extent the petitioner makes this argument under the doctrine of collateral estoppel, her argument fails. In its most basic formulation, the doctrine of collateral estoppel bars a party to a prior action, or a person in privity with such a party, from relitigating any issue or fact actually litigated and determined in the prior action. *See Gray v. Kelly*, 161 N.H. 160, 164 (2010) (quotation omitted). Under certain circumstances, collateral estoppel may preclude the relitigation of findings made by an administrative board when: (1) the issue subject to estoppel is identical in each action; (2) the first action resolved the issue finally on the merits; (3) the party to

be estopped appeared in the first action or was in privity with someone who did; (4) the party to be estopped had a full and fair opportunity to litigate the issue; and (5) the finding at issue was essential to the first judgment. *Tyler v. Hannaford Bros.*, 161 N.H. 242, 246 (2010). "In order for the doctrine of collateral estoppel to apply, all five prerequisites must be satisfied." *Id.* at 247. The applicability of collateral estoppel is a question of law that we review *de novo. Appeal of Wingate*, 149 N.H. 12, 14 (2002).

Here, the prior "decision" to permit the petitioner's claimed deductions was not rendered by an administrative board, nor did it occur in the context of litigation. Indeed, according to the petitioner, the allowance of the deductions occurred as a result of a meeting between the petitioner and an employee of a district office of the department. "It is well established that collateral estoppel may be invoked to preclude reconsideration of an issue only when the issue has been actually litigated." *Petition of Concord Teachers*, 158 N.H. 529, 536 (2009) (quotation, citation and brackets omitted).

Further, pursuant to RSA 161:2, XIII, the department is to ensure compliance with the federal regulations. Thus, to the extent that, in the past, the department allowed deduction of the types of expenses at issue, such would not constitute a final resolution of this issue on the merits because the department must continue to inquire into the petitioner's claimed deductions as part of the "recertification" process mandated under both state and federal law. *See* RSA 161:2, XIII; 7 C.F.R. § 273.14(a); N.H. ADMIN. RULES, He-W 746.02; *see also Appeal of Carnahan*, 160 N.H. 73, 77-78 (2010) (noting that where the legislature has directed the agency to exercise continuous jurisdiction, neither res judicata nor collateral estoppel will apply to prevent the agency from exercising its statutory power to correct a mistake of law). Accordingly, we conclude no estoppel effect attached by virtue of the department's prior allowance of the petitioner's claimed deductions.

The petitioner's argument is similarly unsuccessful if interpreted as one based upon the doctrine of administrative gloss. The doctrine of administrative gloss is a rule of statutory construction. *DHB v. Town of Pembroke*, 152 N.H. 314, 321 (2005). "Administrative gloss is placed upon an ambiguous clause when those responsible for its implementation interpret the clause in a consistent manner and apply it to similarly situated applicants over a period of years without legislative interference. If an 'administrative gloss' is found to have been placed upon a clause, the agency may not change its *de facto* policy, in the absence of legislative action, because to do so would, presumably, violate legislative intent." *Petition of*

*State Employees' Assoc. of N.H.*, 161 N.H. 476, 482 (2011) (brackets and quotation omitted). Lack of ambiguity in a statute or ordinance, however, precludes application of the administrative gloss doctrine. *See DHB*, 152 N.H. at 321; *Heron Cove Assoc. v. DVMD Holdings*, 146 N.H. 211, 216 (2001). Here, the petitioner has failed to show that either RSA 161:2, XIII or 7 C.F.R. § 273.9(d) is ambiguous.

We are the final arbiters of the legislature's intent as expressed in the words of a statute considered as a whole. *In re Juvenile 2004-469*, 151 N.H. 706, 707 (2005). We start by examining the language of the statute itself, ascribing to the words used their plain and ordinary meaning. *In re Christopher K.*, 155 N.H. 219, 229 (2007). "The general rule of statutory construction is that the word 'shall' is a command which requires mandatory enforcement." *Id.* (quotation omitted).

RSA 161:2, XIII mandates that the department "shall . . . administer a food stamp program . . . under the provisions of the Federal Food Stamp Act of 1964." Therefore, by its express terms, RSA 161:2, XIII requires the department to comply with federal regulations in its administration of the food stamp program. Moreover, as noted above, 7 C.F.R. § 273.9(d)(3) recites a specific and detailed list of expenses allowable as excess medical deductions from a participant's income for purposes of the food stamp program. Thus, we conclude there is no ambiguity in the state statute or the federal regulations that would permit the application of the doctrine of administrative gloss to this case. Accordingly, we reject the argument that the department's earlier allowance of the disputed categories of expenses now prevents the department from complying with the federal regulations as mandated by State law.

Finally, the petitioner argues that the department violated Title II of the Americans with Disabilities Act (ADA) by subjecting her to discrimination on the basis of disability. Specifically, she asserts that "[t]he department has refused . . . to make any modifications to their policies, practices or procedures to make reasonable accommodations to ensure that people with disabilities are able to attain an equal opportunity to benefit from this program."

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132 (2006). To state a claim under Title II, the plaintiff must allege that "(1) [s]he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services,

programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007). The parties do not dispute that the petitioner is a qualified individual with a disability, and thus the question is whether she was denied allowable excess medical deductions under the food stamp program by reason of her disability. We conclude she was not.

To the extent feasible, courts look to decisions construing the Rehabilitation Act of 1973 (prohibiting federal grant recipients from discriminating against people with disabilities) to assist in interpreting analogous provisions of the ADA. *Patton v. TIC United Corp.*, 77 F.3d 1235, 1245 (10th Cir. 1996). As noted by the Fourth Circuit Court of Appeals, "[w]e may presume that Congress was aware of the Supreme Court's interpretation of § 504 of the Rehabilitation Act when [Congress] passed the ADA in 1990 and included antidiscrimination language in § 12132 that parallels § 504 of the Rehabilitation Act." *Rogers v. Department of Health, Environ. Control*, 174 F.3d 431, 434 (4th Cir. 1999). Because neither party argues that the non-discrimination principles of the ADA and of the Rehabilitation Act require separate analyses in this case, we will address them together.

In *Alexander v. Choate*, the United States Supreme Court held that section 504 of the Rehabilitation Act "requires that an otherwise qualified handicapped individual must be provided with *meaningful access* to the benefit that the grantee offers." *Alexander v. Choate*, 469 U.S. 287, 301 (1985) (emphasis added). The Court reasoned that this "struck a balance between the statutory rights of the handicapped to be integrated into society and the legitimate interests of federal grantees in preserving the integrity of their programs." *Id.* Thus, to state a claim under Title II of the ADA, the petitioner must allege facts demonstrating that she has been denied meaningful access to the department's food stamp program as a result of the denial of her deduction claims. *See Patton*, 77 F.3d at 1246.

Based on the record in this case, we cannot conclude that the petitioner was denied such access. She fully participated in the food stamp program, and was given the benefit of allowable excess medical deductions. Moreover, the excess medical deductions provision of the regulations is applicable solely to expenses incurred by elderly or disabled persons, thus belying her claim that she was discriminated against on the basis of her disability. *See* 7 C.F.R. § 273.9(d)(3). That the extent of allowable excess

medical deductions may be insufficient to meet the petitioner's needs does not amount to a denial of meaningful program access under the ADA. *See Patton,* 77 F.3d at 1246.

 We note that to the extent the petitioner argues the food stamp program discriminates against those with severe disabilities, the United States Supreme Court has explained that "[i]t is not required that any benefit extended to one category of individual with a disability also be extended to all other categories of individual with a disability. Thus, any class so excluded is not denied benefits solely on the basis of disability within the meaning of [Title II of the ADA]." *Cohen ex rel. Bass v. Mexico,* No. 10-2002, 2011 WL 1746203, at \*8 (10th Cir. May 9, 2011) (citing *Traynor v. Turnage,* 485 U.S. 535, 549 (1988)); *see Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1116 (9th Cir. 2000) ("[T]here is no discrimination under the [ADA] where disabled individuals are given the same opportunity as everyone else.").

*Affirmed.*

DALIANIS, C.J., and DUGGAN, HICKS and LYNN, JJ., concurred.