NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Hillsborough-northern judicial district
No. 2013-0762


THE STATE OF NEW HAMPSHIRE

v.

OSCAR GRANDE

Argued: October 15, 2015
Opinion Issued: January 12, 2016

Joseph A. Foster, attorney general (Susan P. McGinnis, senior assistant attorney general, on the brief and orally), for the State.


Stephanie Hausman, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.


DALIANIS, C.J. Following a jury trial in Superior Court (Abramson, J.), the defendant, Oscar Grande, was convicted of armed robbery. See RSA 636:1 (2007). On appeal, he argues that his trial counsel was ineffective by failing to contest the admission of evidence concerning an uncharged robbery. We affirm.

The relevant facts follow. On January 9, 2013, two men, both wearing masks and gloves, and one carrying a knife, entered the "Bremmer Street Food Mart" (Food Mart), in Manchester, and demanded money from the clerk. The

clerk did not give the men any money, but stated that he was going to call the police. The two men left the store, and the clerk called 911. When the police arrived, the clerk showed them the surveillance footage of the robbery. The police conducted a canine track of the suspects, which was unsuccessful.

At the time of the robbery, the defendant was living with Lisa Velasques, and others, at a residence located approximately one-and-one-half blocks from the Food Mart. On January 9, Velasques overheard the defendant and a man, whom she knew as "Danny," discussing a robbery they had committed at a store "off of Bremmer Street." The two said that the defendant "went in with the knife and was at the counter with the clerk," who told them that "there was a cop out back," and they left without getting any money. They also discussed having put "their gloves and masks in the garbage cans and jump[ed] fences so the dogs wouldn't follow them back to [the] house." After hearing this conversation, Velasques contacted her attorney because she had a pending theft charge and "didn't need any more . . . trouble." Velasques's attorney advised her to speak with the police.

A few days later, Velasques gave a statement to the police concerning what she had heard about the Food Mart robbery. She also told the police that, on January 6, she overheard a separate conversation between the defendant and Danny concerning a robbery of the 99 Cent and Cedar Market (99 Cent Store) in Manchester. During that robbery, Danny, acting alone, went into the store with a knife and demanded money from an employee, who ran into a back room, grabbed a shovel, and chased Danny out of the store. The defendant was charged with the robbery of only the Food Mart.

Before trial, the State moved in limine to introduce evidence of the 99 Cent Store robbery, arguing that it was necessary to corroborate the defendant's admissions regarding the Food Mart robbery. Specifically, it sought to introduce Velasques's testimony concerning what she had overheard about that robbery, as well as the testimony of the 99 Cent Store employee who was working on the night of that robbery. The trial court denied the State's motion, but stated that it would revisit its ruling after opening statements. During opening statements, defense counsel made several statements that caused the trial court to reverse its ruling and allow the State to present evidence of the 99 Cent Store robbery. Following trial, the jury convicted the defendant.

After the defendant filed his direct appeal, he filed in the trial court a motion for new trial, alleging ineffective assistance of counsel. Although the defendant was appointed counsel in his direct appeal, he filed his motion for a new trial as a self-represented party. We stayed the direct appeal pending the outcome of the post-trial proceedings in the trial court. The defendant was subsequently appointed counsel in the post-trial proceedings. In October 2014, the trial court denied the defendant's motion for new trial and his

2

subsequent motion for reconsideration.  The defendant did not timely appeal the trial court's denial of his motion for new trial.  See Sup. Ct. R. 7(1)(B).

In February 2015, the defendant filed a "motion to allow late filing of a notice of appeal" of the trial court's denial of his motion for new trial.  However, because he did not accompany the motion with the required notice of appeal, see Sup. Ct. R. 21(6), we deferred ruling on his motion and ordered him to file the notice of appeal on or before March 23, 2015.  Included with our order was both the notice of discretionary appeal form and instructions on its completion.  The defendant again failed to file a notice of appeal, and we denied his motion to allow late filing.  See id.  Afterward, the defendant filed another motion to allow late filing, which we interpreted as a motion for reconsideration and denied on May 11, 2015.

Approximately a month later, the defendant filed a motion to add an ineffective assistance of counsel claim to his direct appeal.  We granted the motion subject to the State's reservation of the right to raise any procedural, substantive, or preservation issues that might arise upon its review of the record.  The defendant's ineffective assistance of counsel claim is the sole issue presented in this appeal.

The defendant argues that his trial counsel was ineffective because he failed to contest the trial court's ruling that he had opened the door to evidence of the 99 Cent Store robbery and failed to articulate why that evidence was inadmissible.  The State argues that the defendant waived his ineffectiveness claim when he failed to appeal the trial court's rulings in his collateral proceeding.  The State also argues that the doctrines of collateral estoppel, res judicata, and judicial estoppel prevent the defendant from re-litigating his ineffectiveness claim.  Alternatively, the State argues that, even if we reach the merits of the defendant's claim, it was not error for the trial court to have admitted evidence of the 99 Cent Store robbery.

We begin with the State's argument that the defendant is procedurally barred from raising his ineffectiveness claim in this direct appeal.  In his brief, the defendant relies solely upon State v. Thompson, 161 N.H. 507 (2011), in support of his assertion that he may bring his ineffectiveness claim under these circumstances.

In Thompson, we held that in certain "extraordinary" situations, a defendant may raise an ineffective assistance of counsel claim in his direct appeal.  Thompson, 161 N.H. at 527.  Such a claim can be decided on direct appeal "where the factual basis of the claim appears indisputably on the trial record."  Id. (quotation omitted).  Thus, we provided a defendant "with the choice of whether to raise an ineffectiveness claim on direct appeal or in a later collateral proceeding."  Id.  However, "we again emphasize[d] that we strongly

disfavor adjudication on direct appeal," and that "we maintain a strong preference for collateral review of ineffectiveness claims." Id.

Thompson is readily distinguishable from the instant case. Thompson involved a defendant who brought his ineffectiveness claim in his direct appeal, without having first sought collateral review in the superior court. Id. at 509. Here, the defendant stayed his direct appeal, litigated his ineffectiveness claim in the trial court, lost, and failed to appeal the trial court's decision. We have stated that a defendant may request that we stay his direct appeal in order for him to raise his ineffectiveness claim in the trial court before proceeding with the rest of his appeal. Id. at 528. However, nothing in Thompson allows a defendant to litigate his ineffectiveness claim in the trial court, fail to appeal the trial court's ruling, and then obtain appellate review of his claim as part of his direct appeal.

The State contends that the defendant is precluded, under the doctrine of collateral estoppel, from making his ineffective assistance of counsel argument in this appeal. The doctrine of collateral estoppel "bars a party to a prior action, or a person in privity with such a party, from relitigating any issue or fact actually litigated and determined in the prior action." Hansa Consult of N. Am. v. Hansaconsult Ingenieurgesellschaft, 163 N.H. 46, 50 (2011). The State sets forth the test, generally applicable in civil cases, that collateral estoppel applies when: (1) the issue subject to estoppel is identical in each action; (2) the first action resolved the issue finally on the merits; (3) the party to be estopped appeared in the first action or was in privity with someone who did; (4) the party to be estopped had a full and fair opportunity to litigate the issue; and (5) the finding at issue was essential to the first judgment. Id. Because we have held that "[p]ost-conviction relief, such as a motion for a new trial based upon ineffective assistance of counsel, is civil in nature," and because the defendant does not argue otherwise, we assume without deciding that the civil test applies. State v. Hall, 154 N.H. 180, 182 (2006) (quotation omitted); see Pennsylvania v. Finley, 481 U.S. 551, 557 (1987).

We first consider whether the issues the defendant raised in his motion for new trial are identical to those he now raises on appeal. In the trial court, the defendant argued that his trial counsel was ineffective because he had failed to argue that: (1) in fact, he had not opened the door to Velasques's testimony about the 99 Cent Store robbery; and (2) Velasques's testimony constituted inadmissible hearsay. These issues are identical to those which the defendant raises on appeal. On appeal, he argues that his trial counsel was ineffective because, "when the trial court indicated that counsel had opened the door, . . . counsel appeared to have agreed that he opened the door" and because counsel "did not present the trial court with the basis upon which it could determine that the evidence was inadmissible."

4

We next consider whether these issues were resolved finally on the merits. The trial court held a hearing on the merits and, after the court rejected the defendant's argument, the defendant failed to appeal the trial court's ruling. The defendant's failure to appeal rendered the trial court's decision a final judgment. See Super. Ct. Civ. R. 46(b). Therefore, we conclude that the first action resolved the issues on the merits.

We conclude that the third and fourth prongs of the collateral estoppel test are also met because the defendant was a party to the trial court action and is a party in this appeal, was appointed counsel, and the trial court held a hearing on the merits of his motion for new trial. We likewise conclude that the trial court's findings on the defendant's ineffective assistance issues were essential to the final judgment. The court considered and rejected the defendant's arguments on the merits, and, had it not done so, would have been required to grant his request for a new trial. See Tyler v. Hannaford Bros., 161 N.H. 242, 247 (2010). Therefore, because all of the prongs of the test are satisfied, we hold that the defendant is collaterally estopped from raising his ineffective assistance of counsel issues again in this direct appeal.

Affirmed.

CONBOY, LYNN, and BASSETT, JJ., concurred.