NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Department of Health and Human Services
No. 2015-0079


PETITION OF KELLY HAGENBUCH
(New Hampshire Department of Health and Human Services)

Submitted:  September 21, 2016
Opinion Issued:  January 13, 2017


Tarbell & Brodich Professional Association, of Concord (Friedrich K. Moeckel on the brief), for the petitioner.


Joseph A. Foster, attorney general (Laura E. B. Lombardi, senior assistant attorney general, on the brief), for the New Hampshire Department of Health and Human Services.


BASSETT, J.  The petitioner, Kelly Hagenbuch, has petitioned for a writ of certiorari, see Sup. Ct. R. 11, challenging the termination of her food stamp benefits by the New Hampshire Department of Health and Human Services (department).  The department terminated the petitioner's benefits because it found that her income exceeded the maximum amount permitted by the program.  In calculating the petitioner's income, the department included distributions from an irrevocable trust, of which the petitioner is the sole beneficiary, that had been made by the trustee to third parties.  These distributions included payments for trust expenses and for legal fees that the petitioner had incurred to obtain public benefits.  On administrative appeal,

the presiding officer of the department's Administrative Appeals Unit (AAU) agreed with the department that the trust distributions counted as income to the petitioner. In her petition for a writ of certiorari, the petitioner claims that the presiding officer erred because the trust distributions should have been excluded from her income for the purpose of determining food stamp benefits. We reverse.

The record supports the following facts. The petitioner began receiving food stamp benefits through the department in approximately 2008. The department is the state agency tasked with administering the federal supplemental nutrition assistance program, commonly known as food stamps. See 7 U.S.C. § 2013(a) (2012) (amended 2014); RSA 161:2, XIII (2014). Under the program, the department disburses funds to eligible, low-income households so that the household members may "obtain a more nutritious diet." 7 U.S.C. § 2011 (2012). Generally, a household is eligible for food stamps if the household's resources and income fall below certain thresholds. See 7 C.F.R. §§ 273.8(b), 273.9(a) (2016). Alternatively, a household may be "categorically eligible" for food stamps, without regard to its resources and income, if household members qualify for certain other governmental assistance programs. See id. §§ 273.2(j)(2), 273.8(a), 273.9(a). The parties agree that the petitioner is categorically eligible for food stamp benefits.

Separate from the question of a household's eligibility for food stamps is the amount of benefits to which an eligible household is entitled. The amount of benefits an eligible household receives depends, in part, upon the household's income. See id. § 273.10(e)(2)(ii)(A); see also 7 U.S.C. § 2017(a) (2012). In order to track household income and determine the amount of benefits, the department periodically requires each household receiving food stamp benefits to provide current income information. See generally 7 C.F.R. § 273.14 (2016); N.H. Admin. Rules, He-W 746.02. This is known as the recertification process. See 7 C.F.R. § 273.14(b).

In early 2013, as part of her recertification for food stamp benefits, the petitioner submitted income and asset information to the department. In connection with her submission, the petitioner provided information regarding distributions made and income generated by the Kelly Jean Hagenbuch Irrevocable Trust (Trust), of which the petitioner is the sole beneficiary during her lifetime. The Trust was originally funded as part of the settlement of a lawsuit arising out of an injury to the petitioner. Pursuant to the terms of the Trust, an "Independent Trustee" (trustee) is vested with the sole discretion to make distributions to the petitioner or for her benefit.

The department examined the Trust's income and distributions between August 2012 and February 2013 and counted the following distributions as income to the petitioner (collectively, "the trust distributions"): (1) distributions that the trustee made to third parties to cover trust expenses—trust

administration fees, legal fees, investment-management expenses, and tax preparation fees—and (2) distributions that the trustee made to the petitioner's attorneys to pay the legal fees that the petitioner incurred to obtain public benefits.  These distributions totaled $20,344.94.  None of the distributions was paid directly to the petitioner.

In June 2013, the department issued a Notice of Decision, in which it "[c]losed," i.e., terminated, the petitioner's benefits, concluding that the petitioner's net income exceeded the maximum amount permitted by the program.  The petitioner's mother, serving as the petitioner's representative, filed a timely request for a "fair hearing" with the AAU.  RSA 126-A:5, VIII (2015).

The presiding officer of the AAU affirmed the department's decision that the trustee's payments to third parties constituted income to the petitioner.  With the inclusion of those distributions, the petitioner's income would be too high for her to receive any benefits.  The presiding officer denied the petitioner's motion for reconsideration as it related to the issues relevant to the present petition.  This petition followed.

On appeal, the petitioner requests that we reverse the presiding officer's decision that the department properly counted the trust distributions as income.  First, she argues that the trust distributions do not meet the definition of income under the regulations.  Second, she argues that, even if the distributions are deemed to be income, they fall within one of the income exclusions in the regulations.  Third, the petitioner contends that the presiding officer erred by relying upon evidence that was not submitted by either party.  The petitioner also requests that we determine whether future payments that the trustee intends to make to the petitioner's guardian will count as income.

"The only judicial review of a fair hearings decision issued by the department is by petition for a writ of certiorari."  Petition of Kalar, 162 N.H. 314, 318 (2011) (quotation and brackets omitted).  "Review on certiorari is an extraordinary remedy, usually available only in the absence of a right to appeal, and only at the discretion of the court."  Petition of Chase Home for Children, 155 N.H. 528, 532 (2007).  Our review of the department's decision on a petition for writ of certiorari entails examining whether the department has "acted illegally with respect to jurisdiction, authority or observance of the law or has unsustainably exercised its discretion or acted arbitrarily, unreasonably or capriciously."  Id.  "We exercise our power to grant such writs sparingly and only where to do otherwise would result in substantial injustice."  Id.

This case presents an issue of first impression in New Hampshire: whether a distribution made by the trustee of an irrevocable trust to third parties counts as income to the trust beneficiary for the purpose of determining

3

food stamp benefits. Resolving this issue requires that we interpret federal food stamp statutory and regulatory provisions. "The interpretation of a statute or a regulation is a question of law, which we review de novo." Petition of Estate of Braiterman, 169 N.H. ___, ___, 145 A.3d 682, 686 (2016) (slip op. at 4). We interpret federal statutes and regulations "in accordance with federal policy and precedent." Id. (quotation omitted). "When interpreting statutes and regulations, we begin with the statutory or regulatory language, and, if possible, construe that language according to its plain and ordinary meaning." Id.

Because the department must administer the food stamp program in accordance with federal law, see RSA 161:2, XIII; Petition of Kalar, 162 N.H. at 318, we begin by examining how federal food stamp law directs state agencies to treat irrevocable trusts. When calculating household resources for the purpose of determining whether the household is eligible for food stamps, a state agency may not include funds in certain types of irrevocable trusts. See 7 C.F.R. § 273.8(e)(8) (2016). The regulations set forth a number of requirements that an irrevocable trust must meet in order for it to be considered an excludable resource. See id. § 273.8(e)(8)(i)-(iv). If the irrevocable trust meets those requirements, any funds in the trust, as well as the "income produced by that trust to the extent it is not available to the household," are not considered resources of the household. Id. § 273.8(e)(8).

Because the parties stipulated in the administrative proceedings that the petitioner's trust is an excludable resource under section 273.8(e)(8), and the presiding officer accepted that stipulation, we will assume, without deciding, that the Trust is an excludable resource. We express no opinion regarding whether the Trust, in fact, meets the requirements enumerated in section 273.8(e)(8), and we need not decide how the funds in the Trust would be treated if, in the future, the department were to conclude that the Trust is not an excludable resource.

Funds in an excluded trust are treated as income when they are withdrawn from the trust, unless the withdrawal is excluded "under the provisions of paragraph (c)" of section 273.9. Id. § 273.9(b)(2)(vi). Paragraph (c), in turn, lists a number of transactions that are excluded from household income. See id. § 273.9(c). One exclusion is for "[a]ny gain or benefit which is not in the form of money payable directly to the household," including "certain vendor payments." Id. § 273.9(c)(1).

A vendor payment is a payment made by a person outside of the household to a third party for the household's benefit. Id. A vendor payment is excluded from income for the purpose of determining food stamp benefits if the person making the payment uses funds that "are not owed to the household." Id. § 273.9(c)(1)(vii) (emphasis added). In contrast, when the funds are "legally obligated and otherwise payable to the household," but are

"diverted by the provider of the payment to a third party for a household expense," the funds are counted as income. Id.

The petitioner argues that, even assuming that the trust distributions otherwise come within the definition of income, the distributions are not counted as income because they were not owed to her and were, therefore, excluded vendor payments. We agree.

The narrow question before us is whether the trust distributions were "owed" to the petitioner. Id. The term "owed" is not defined in the regulations, so we look to the plain and ordinary meaning of the word. See Petition of Estate of Braiterman, 169 N.H. at ___, ___, 145 A.3d at 686, 689-91 (interpreting and applying federal Medicaid law) (slip op. at 4, 8-11). The plain meaning of "owe" is, in part, "to be under an obligation to pay." Webster's Third New International Dictionary 1612 (unabridged ed. 2002). Thus, funds are "owed to the household" when the household has a legal right to receive the funds. 7 C.F.R. § 273.9(c)(1)(vii). This interpretation is consistent with the provision as a whole, which provides that whether funds are excluded turns on whether the "moneys [are] legally obligated and otherwise payable to the household." Id. In addition, the regulations provide a number of illustrations of excluded vendor payments, all of which require a determination as to whether a household is entitled to receive the funds in question. See id. § 273.9(c)(1)(vii)(A)-(C).

Accordingly, a distribution by a trustee to a third party is an excluded vendor payment if the household does not have a legal right to receive the funds that are used to pay the third party. See id. § 273.9(c)(1)(vii). In order to determine a beneficiary's rights with respect to withdrawn funds, we examine the terms of the trust. See Restatement (Second) of Trusts § 128, at 276 (1959) ("The extent of the interest of the beneficiary of a trust depends upon the manifestation of intention of the settlor . . . ." (bolding omitted)).

Here, the terms of the Trust establish that the petitioner was not owed— i.e., did not have the legal right to receive—the funds used to pay the third parties for trust expenses and legal fees. The trustee has the sole discretion to make payments from the trust, either to the petitioner or to third parties for the petitioner's benefit. The trustee also has the power to pay trust expenses with trust assets. Despite her status as the beneficiary, the petitioner may not access trust assets, amend the Trust's terms, or terminate the Trust. Nor does the petitioner have any right to "require payments from the Trust for any purpose." Indeed, under Massachusetts law, which governs the construction and administration of the Trust, "any right of [a] beneficiary to receive anything [from the trust] is subject to the condition precedent of the trustee having first exercised his discretion." Pemberton v. Pemberton, 411 N.E.2d 1305, 1312 (Mass. App. Ct. 1980) (quotation, italics, and brackets omitted); see also Pfannenstiehl v. Pfannenstiehl, 55 N.E.3d 933, 940-41 (Mass. 2016).

Regarding the distributions at issue, the trustee did not exercise his discretion in a manner that gave the petitioner a legal right to receive the funds. See Pemberton, 411 N.E.2d at 1312. Rather, pursuant to his authority, the trustee chose to pay third parties directly to cover trust expenses and the petitioner's legal fees. As the presiding officer noted in her final decision, the purpose of the distributions was to satisfy those obligations. In light of the nature of the trust arrangement and the trustee's actions in this case, we conclude that the funds used for the trust distributions were not "owed to" the petitioner within the meaning of the regulations. 7 C.F.R. § 273.9(c)(1)(vii).

The department, however, advances several arguments as to why the trust distributions cannot be considered to be vendor payments. Most of the department's arguments are subsumed by one overarching theory: because the Trust was originally established with the petitioner's own funds, no trust distribution—including the trust distributions at issue—may come within the vendor payment exclusion. We disagree.

We need not decide the validity of the premise underlying the department's argument—that because the money used to establish the Trust was derived from the settlement of the petitioner's personal injury lawsuit, the Trust was established with the petitioner's "own funds." Even assuming that the premise is correct, we conclude that the vendor payment exclusion applies to the trust distributions because the regulations do not recognize the distinction that the department attempts to draw regarding trusts originally funded by the household.

Although a trust established with household funds must satisfy certain requirements in order to be considered an excludable resource, see id. § 273.8(e)(8)(iv), once the trust qualifies as an excludable resource, the funds in the trust are not considered resources of the household, regardless of whether the trust in question was funded by the household or by a nonhousehold member, see id. § 273.8(e)(8). Likewise, the regulations provide a single framework for determining when funds withdrawn from an excluded trust are treated as income. Neither section 273.9(b)(2)(vi), which excludes from income any trust withdrawal that comes within one of the enumerated exclusions, nor section 273.9(c), which lists those exclusions, limits its application to excluded trusts funded by a nonhousehold member. Rather, when read together, these provisions contemplate that money in an excluded trust—regardless of how the trust was originally funded—will not be attributed to the beneficiary unless and until a non-exempt withdrawal is made. Because the parties agree that the Trust is an excludable resource, any withdrawal from the Trust is subject to the exclusions set forth in the regulations, including the exclusion for vendor payments.

The department also argues that, because the Trust must be administered for the petitioner's benefit, the funds in the Trust are "owed to the

household" within the meaning of the regulations. However, as explained above, funds are owed to a household when the household has a legal right to receive the funds. Under the terms of the Trust, the trustee may pay third parties for the petitioner's benefit or to cover trust expenses, and the petitioner's status as the beneficiary of the Trust does not, standing alone, give her the right to control trust assets, compel distributions, or receive payment from the Trust. Thus, although the petitioner is the beneficiary of the Trust, until the trustee disburses trust funds that the petitioner has legal right to receive, the funds are not "owed to the household."

In this case, given that the distributions made by the trustee to third parties were not owed to the petitioner—and therefore, were excluded vendor payments—the department should have excluded the trust distributions from the petitioner's income. Accordingly, we reverse the presiding officer's decision that the department properly counted the trust distributions as income.

In light of our decision, we need not address the petitioner's other arguments. Also, because the department stipulated during the administrative appeal that future payments made by the trustee to the petitioner's guardian would be treated by the department in a manner "similar to" the trust distributions at issue here, we need not separately address the question of whether trustee payments to the guardian will count as income.

Reversed.

DALIANIS, C.J., and HICKS and CONBOY, JJ., concurred; LYNN, J., concurred specially.

LYNN, J., concurring specially. I concur with the majority decision but write separately to emphasize the importance to the result reached that the case comes before us based upon a stipulation of facts, which includes the parties' agreement that the irrevocable trust at issue is an excludable resource for purposes of the food stamp program. See Joint Stipulation of Fact ¶ 8 ("The Trust is not a countable resource for purposes of determining Kelly's eligibility for benefits under the SSI, Medicaid and Food Stamp programs."); see also 7 C.F.R. § 273.8(e)(8) (2016). Given that this stipulation has been in place throughout the proceedings before the agency and on appeal, it would be unfair to the parties were we now to call the stipulation into question in deciding the legal issues before us. We therefore properly accept the stipulation in deciding the present case.

However, since the petitioner's future eligibility for food stamps presumably will require that she participate in the "'recertification' process mandated under both state and federal law," Petition of Kalar, 162 N.H. 314, 321 (2011), and since the department has a continuing responsibility to ensure that the requirements of the law and the regulations are met, id., I believe it

important to note that the record raises at least some question as to whether the parties have properly analyzed how the regulations governing the food stamp program apply to the trust at issue in this case.

Because the parties' stipulation includes their agreement that the trust qualifies as a special needs trust for Medicaid purposes, see 42 U.S.C. § 1396p(d)(4)(A), I also assume, without deciding, that this is correct. But merely because a trust qualifies as a special needs trust under Medicaid is not sufficient to make it an excludable resource for food stamp purposes. Section 273.8(e)(8) of the regulations provides, in relevant part, that "[r]esources having a cash value which is not accessible to the household, such as but not limited to, irrevocable trust funds" are to be excluded in determining whether the household meets the resource eligibility requirements of the food stamp program. 7 C.F.R. § 273.8(e)(8) (emphasis added). The regulation goes on to state:

> Any funds in a trust or transferred to a trust, and the income produced by that trust to the extent it is not available to the household, shall be considered inaccessible to the household if:
>
> (i)    The trust arrangement is not likely to cease during the certification period and no household member has the power to revoke the trust arrangement or change the name of the beneficiary during the certification period;
>
> (ii)    The trustee administering the funds is either:
>
> > (A) A court, or an institution, corporation, or organization which is not under the direction or ownership of any household member, or (B) an individual appointed by the court who has court imposed limitations placed on his/her use of the funds which meet the requirements of this paragraph;
>
> (iii)    Trust investments made on behalf of the trust do not directly involve or assist any business or corporation under the control, direction, or influence of a household member; and
>
> (iv)    The funds held in irrevocable trust are either:
>
> > (A) Established from the household's own funds, if the trustee uses the funds solely to make investments on behalf of the trust or to pay the educational or medical expenses of any person named by the household creating

the trust, or (B) established from non-household funds by a non-household member.

Id. (emphasis added).

The hearings officer found that the trust, which was funded with the proceeds of the settlement of a personal injury lawsuit brought by or on behalf of the petitioner, was a self-funded trust—that is, one "[e]stablished from the household's own funds," id. § 273.8(e)(8)(iv)(A)—and neither party challenges that finding. However, the record before us raises a question as to whether the settlement proceeds ever actually passed through the hands of the petitioner before being placed in the trust. If the petitioner never had control of the settlement funds, there may be an issue as to whether the trust can properly be characterized as self-funded, as opposed to being funded by a "nonhousehold member," i.e., the tortfeasor or the tortfeasor's insurance carrier. If the trust is not a self-funded trust, then the hearings officer's decision is clearly in error because, as we point out, the trust is treated as inaccessible to the petitioner and distributions from the trust made to third parties by the trustee, as a matter of discretion rather than pursuant to a binding obligation to the petitioner, are properly treated as vendor payments excluded from income. See id. §§ 273.9(b)(2)(vi), 273.9(c)(1)(vii).

On the other hand, if the hearings officer was correct in treating the trust as a self-funded trust, her decision still seems to be erroneous, but for a different reason. Even assuming that all other criteria of 7 C.F.R. § 273.8(e)(8) are satisfied—and the record before us does not definitively establish that they are—the ostensibly self-funded trust does not appear to qualify as an excludable resource under this regulation because the trustee has not used the trust funds "solely to make investments on behalf of the trust or to pay the educational or medical expenses of any person named by the household creating the trust." Id. § 273.8(e)(8)(iv)(A). The most apparent deviation from this requirement of the regulations is that trust funds were used to pay for legal services provided to the petitioner; but even the expenditure of trust funds for the payment of trust expenses and trust administration fees appears not to qualify as "investments on behalf of the trust" within the meaning of the regulation. Id.

Although the resource eligibility regulations found in 7 C.F.R. § 273.8 do not apply, as such, to the petitioner because she is categorically eligible for food stamps, § 273.8(e)(8) is relevant in determining whether distributions from the trust are included in the petitioner's income because § 273.8(e)(8) is cross-referenced in 7 C.F.R. § 273.9, the section of the regulations that defines the types of income that are included and excluded for purposes of the food stamp program. Section 273.9(b)(2)(vi) specifically provides that "[m]onies which are withdrawn or dividends which are or could be received by a household from trust funds considered to be excludable resources under § 273.8(e)(8) . . . shall

be considered income . . . unless otherwise exempt under the provisions of paragraph (c) of this section."  However, if the trust does not meet the requirements of § 273.8(e)(8), the trust funds are deemed "accessible" to the household.  And if the trust funds are accessible to the household, the trust is not treated as an entity separate from the household.

But it does not follow that if the trust is not "separate" from the petitioner's household, all distributions from the trust are deemed to be income to her under 7 C.F.R. § 273.9, which is essentially the manner in which the hearings officer treated them.  The settlement monies from which the trust was originally established would appear to qualify as a "lump-sum payment" as defined in 7 C.F.R. § 273.9(c)(8).  Such monies are generally treated as a resource in the month received, rather than as income, for purposes of the food stamp program.  See id. §§ 273.8(c)(1), 273.9(c)(8).  Thus, in the absence of some other consideration which has not been brought to our attention, if the trust is regarded as an asset accessible to the petitioner, the income properly chargeable to her under 7 C.F.R. § 273.9(b)(2)(v) could not exceed the earnings of the trust, which, during the certification period at issue, amounted to $3,158.11—far less than the legal fees, trust expenses and trust administrator fees that the hearings officer attributed to her as income.  As with any other asset, withdrawals from the trust in excess of its earnings would appear not to be considered as income to the petitioner, but rather as a reduction of her capital (similar to a withdrawal from the principal of a savings account).